# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, | No. 25-cv-17612 (GC) (JTQ) |
| Plaintiff, | *Electronically Filed* |
| v. | Motion Return Date: March 16, 2026 |
| DALE G. CALDWELL, in his official capacity as Secretary of State of New Jersey,* | |
| Defendant. | |

## BRIEF IN SUPPORT OF DEFENDANT DALE G. CALDWELL'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Stephen Ehrlich
*Deputy Solicitor General*

Liza B. Fleming
*Deputy Attorney General*

JENNIFER DAVENPORT
ACTING ATTORNEY GENERAL
OF NEW JERSEY
R.J. Hughes Justice Complex,
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625
Phone: (862) 350-5800
Email: Liza.Fleming@njoag.gov
*Attorneys for Defendant*

*(Additional counsel listed on signature page)*

---

* The current Secretary of State of New Jersey, Dale G. Caldwell, has been automatically substituted for the former Secretary of State, Tahesha Way, under Fed. R. Civ. P. 25(d).

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................ 1

BACKGROUND ................................................................ 3

    A.  The National Voter Registration Act. ......................... 3

    B.  The RNC's March and June 2025 demands. ................ 4

    C.  The Division of Elections' productions and correspondence with the RNC. ................................................ 6

    D.  The RNC sues in state court under OPRA. ................. 8

    E.  Four months later, the RNC sues in federal court under the NVRA. ............................................................ 10

LEGAL STANDARDS ...................................................... 11

ARGUMENT .................................................................... 12

  I.  The complaint fails to plausibly allege standing........... 12

  II.  The complaint should be dismissed as precluded by the earlier-filed state-court action. ..................................... 16

  III. The complaint fails to state a claim for relief. .............. 20

    A.  The RNC improperly demands the production of records that do not exist, requiring the Division of Elections to create new records. ................................................ 21

    B.  The RNC improperly demands the production of electronic records on a rolling basis. ...................................... 24

CONCLUSION ................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1789 Found., Inc. v. Schmidt*,
  781 F. Supp. 3d 282 (M.D. Pa. 2025) .......................................... 14, 24

*ACORN Int'l v. State by & through Jacobsen*,
  556 P.3d 515 (Mont. 2024) ............................................................27

*Archbrook Laguna, LLC v. Marsh*,
  997 A.2d 1035 (N.J. App. Div. 2010) .............................................18

*Auto. Fin. Corp. v. DZ Motors, LLC*,
  No. 16-7955, 2018 WL 11446277 (D.N.J. Dec. 17, 2018) ...............23

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007) ...........................................................11

*Bellitto v. Snipes*,
  268 F. Supp. 3d 1328(S.D. Fla. 2017) ...........................................24

*Brunetta v. Egg Harbor Twp. Sch. Dist.*,
  No. 22-7511, 2023 WL 5274529 (D.N.J. Aug. 16, 2023) .......... 18, 19

*Campaign Legal Center v. Scott*,
  49 F.4th 931 (5th Cir. 2022) ..........................................................14

*Comm. for Mass. Voter Identification Ballot Question v. Galvin*,
  790 F. Supp. 3d 1 (D. Mass. 2025) .................................................25

*Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
  181 F.3d 410 (3d Cir. 1999) .............................................................8

*DiTrolio v. Antiles*,
  662 A.2d 494 (N.J. 1995) ...............................................................17

*Doe-1 v. LexisNexis Risk Sols., Inc.*,
  No. 24-4566, 2025 WL 1334461 (D.N.J. May 7, 2025) ................... 14

*Fields v. Thompson Printing Co.*,
  363 F.3d 259 (3d Cir. 2004) ......................................................... 17

*Greater Birmingham Ministries v. Sec'y of State for Ala.*,
  105 F.4th 1324 (11th Cir. 2024) ................................. 25, 26, 27, 28

*Grippi v. Keith*,
  No. 22-02640, 2024 WL 2058380 (D.N.J. May 8, 2024) ................... 8

*Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*,
  810 F.3d 116 (3d Cir. 2016) ........................................................... 2

*Hoffman v. Nordic Nats., Inc.*,
  837 F.3d 272 (3d Cir. 2016) ......................................................... 19

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012) ......................................................... 11

*Kelly v. RealPage Inc.*,
  47 F.4th 202, 211 (3d Cir. 2022) .................................................. 12

*Kissinger v. Reporters Comm. for Freedom of the Press*,
  445 U.S. 136 (1980) ...................................................................... 23

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, (1992) ..................................................................... 12

*McNeil v. Legis. Apportionment Comm'n*,
  828 A.2d 840 (N.J. 2003) .............................................................. 16

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
  465 U.S. 75 (1984) ........................................................................ 16

*Murrin v. Comm'r of Internal Revenue,*
    158 F.4th 527  (3d Cir. 2025)......................................................25

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,*
    571 F.3d 299 (3d Cir. 2009) ........................................................19

*Pub. Int. Legal Found. v. Bennett,*
    No. 18-0981, 2019 WL 3819212 (S.D. Tex. Aug. 14, 2019) ...........19

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.,*
    136 F.4th 456, 465 (3d Cir. 2025) ...............................12, 14, 15, 16

*Republican Nat'l Comm. v. Division of Elections,*
    Docket No. MER-L-1499-25 (N.J. Super. Ct. Law Div. July 17,
    2025) .......................................................................................8

*Ricketti v. Barry,*
    775 F.3d 611 (3d Cir. 2015) ........................................................17

*Scott v. Schedler,*
    771 F.3d 831 (5th Cir. 2014) .......................................................24

*Star Athletica, L.L.C. v. Varsity Brands, Inc.,*
    580 U.S. 405 (2017) ...................................................................25

*TransUnion LLC v. Ramirez,*
    594 U.S. 431, 436 (2021) ......................................................13, 14

*United States v. Benson,*
    No. 25-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ...........21

*United States v. Weber,*
    No. 25-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026)............20

*Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n,*
    959 F.3d 569 (3d Cir. 2020) ........................................................12

*Wilson v. USI Ins. Serv. LLC,*
  57 F.4th 131 (3d Cir. 2023) ........................................................11

*Youssef v. Dep't of Health & Senior Servs.,*
  524 F. App'x 788 (3d Cir. 2013) .................................................18

*Zahner v. Sec'y Pa. Dep't of Hum. Servs.,*
  802 F.3d 497 (3d Cir. 2015) .......................................................27

## **Statutes**

52 U.S.C. § 20501 ..............................................................3, 15

52 U.S.C. § 20507 ............................................................ passim

52 U.S.C. § 20510 .................................................................24

Pub. L. No. 103-31, 107 Stat. 77 (1993) ...........................................3

Pub. L. No. 104-231, 110 Stat. 3048 (1996).......................................28

## **Other Authorities**

H.R. Rep. No. 103-9 (1993), *reprinted in* 1993 U.S.C.C.A.N. 105 .......3

S. Rep. No. 103-6 (1993) .........................................................3

## **Rules**

N.J. Ct. R. 4:5-1.................................................................9

N.J. Ct. R. 4:30A ...............................................................17

## <u>INTRODUCTION</u>

This case arises under the public-inspection provision, 52 U.S.C. § 20507(i), of the National Voter Registration Act of 1993 ("NVRA"). Plaintiff Republican National Committee ("RNC") challenges the New Jersey Division of Elections' responses to vast and overlapping demands for the production of electronic records. But the RNC's complaint is fundamentally flawed and meritless.

At the threshold, the complaint fails to establish the RNC's Article III standing. It does not allege—as it must—facts showing any "adverse effects" or "downstream consequences" resulting from the alleged nonproduction of records. Nor does it plausibly connect any asserted harm to the interests Congress sought to protect through the NVRA. So under controlling precedent, the complaint should be dismissed.

The RNC's litigation posture further underscores the impropriety of this suit. Months before filing this federal action, the RNC brought a substantially similar lawsuit in New Jersey Superior Court under the New Jersey Open Public Records Act ("OPRA"), based on the same underlying demands. So the Court should also dismiss this action based on the preclusive effect of that earlier-filed state-court action.

Beyond those fatal defects, the complaint independently fails on the merits. The RNC's demands plainly exceed the scope of the NVRA, and the Division of Elections has already complied with what the NVRA requires. First, the RNC improperly seeks lists and purported records that

indisputably do not exist and would have to be created from scratch—an infeasible undertaking that the NVRA does not require. Second, the RNC insists that the Division of Elections *produce* records in "electronic format" and "on a rolling basis," even though the unambiguous statutory text requires only that covered records be made available to "inspect" and possibly "photocopy."

Ultimately, the NVRA's public-inspection provision is not boundless. It is subject to longstanding safeguards designed to ensure that records requests do not overwhelm election officials or interfere with secure and orderly elections. The RNC's demands disregard those limits. The Division of Elections produced responsive records and attempted in good faith to engage with the RNC to reasonably define the scope of any remaining demands, consistent with state and federal law. The RNC instead chose to sue on the theory that the NVRA allows it to obtain any election-related materials it wants, in any form it wants, at any time it wants. The NVRA confers no such right. The complaint should be dismissed.

# BACKGROUND[1]

## A.    The National Voter Registration Act.

In 1993, Congress enacted the National Voter Registration Act to reverse declining voter participation in federal elections. Pub. L. No. 103-31, 107 Stat. 77 (1993). The Act responded to a long history of "[r]estrictive registration laws and administrative procedures" introduced "in the late nineteenth and early twentieth centuries to keep certain groups of citizens from voting: in the North, the wave of immigrants"; "in the South, blacks and the rural poor." H.R. Rep. No. 103-9, at 2 (1993), *reprinted in* 1993 U.S.C.C.A.N. 105, 106. Congress sought to counteract that history by "increas[ing] registration of eligible citizens," with "one of the guiding principles" being that "once registered, a voter remains on the rolls so long as he or she is eligible to vote." S. Rep. No. 103-6, at 1–2, 19 (1993). To that end, the Act establishes procedures to "increase the number of eligible citizens who register to vote in elections for Federal office" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1)–(4).

Section 8 of the NVRA, titled "Requirements with respect to administration of voter registration," addresses how States administer their voter registration rolls. *Id.* § 20507. The section's overarching aim is to

---

[1] The Secretary recites here only those facts alleged in the complaint or stated in the exhibits thereto, as well as facts of which the Court may take judicial notice. *See Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016).

"ensure that any eligible applicant is registered to vote in an election." *Id.* § 20507(a)(1). "Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll" must "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." *Id.* § 20507(b)(1).

Subsections (c) through (f) of Section 8 set out a detailed process for evaluating whether a voter should be removed based on a change of address and for deciding where a registrant is entitled to vote. *Id.* § 20507(c)–(f). That process must be completed "not later than 90 days prior to the date of a primary or general election for Federal office." *Id.* § 20507(c)(2)(A).

Subsection (i), titled "Public disclosure of voter registration activities," provides for transparency. It requires that a State "maintain" and "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* § 20507(i)(1). And the NVRA expressly exempts "records relat[ing] to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." *Id.*

## B.    The RNC's March and June 2025 demands.

This case involves two sets of demands from the RNC. The first set was sent on March 25, 2025, under the heading "Public Records Request

Under the National Voter Registration Act & State Public Records Law." Compl., Ex. A (ECF Doc. 1-1). The letter from counsel for the RNC demanded a vast array of records set forth in sixteen numbered categories, with 62 subparts, dating back to March 2023 relating to broad categories of information. *Id.*, Ex. A, at 2–5. For example, one request demanded "[e]ach record utilizing, documenting, or discussing any of the following databases/systems/centers for the purpose of identifying deceased, relocated, criminally convicted, duplicate-registered, non-voting, or non-citizen voters and updating your state's voter registration list from March 2023 until the time of your response to this request": (a) "National Change of Address database"; (b) "Systematic Alien Verification for Entitlements database"; (c) "Electronic Registration Information Center"; (d) "Social Security Death Index"; and (e) "National Association of Public Health Statistics and Information System." *Id.*, Ex. A, at 4. The RNC demanded that these records be provided "in electronic format and on a rolling basis." *Id.*, Ex. A, at 6.

The second set of demands was sent on June 16, 2025, and it included demands for records since June 2023 documenting voters who requested to be removed (and the date of request) as well as records documenting who was removed. *Id.*, Ex. D, at 2. Once again, the RNC demanded production "in electronic format and on a rolling basis." *Id.*, Ex. D, at 3.

5

### C.    The Division of Elections' productions and correspondence with the RNC.

The Division of Elections has produced three substantial files in response to the RNC's demands. On July 11, 2025, the Division provided two sets of files: (1) a list of all voters removed from New Jersey's voter rolls between March 2023 and July 11, 2025; and (2) a list of all inactive voters in the State. *Id.*, Ex. G. And on July 29, 2025, it provided a list "of all voters who were deleted between June 2023 to July 29, 2025, due to the voter's request." *Id.*, Ex. H, at 11. These three lists contained thousands of voters' names, addresses, dates of birth, ward and district numbers, registration statuses, and the date the particular action occurred for each voter.

The Division has also repeatedly sent correspondence to the RNC to keep it updated, to object to improper requests, and to explain what records either do not exist or cannot be produced. On June 18, 2025, the Division's Executive Director, Donna Barber, wrote to the RNC to inform it that the Division was in the process of "reviewing [the RNC's first] request," explaining that the Division had been required to devote the overwhelming majority of its resources up to that point to preparing for "New Jersey's June 10, 2025 statewide primary election." *Id.*, Ex. C. Ms. Barber invited the RNC to contact her with any questions it might have. *Id.*

Rather than follow up with any inquiries, counsel for the RNC sent a letter on July 3, 2025, which asserted that the RNC's March 25, 2025

6

demands had been made pursuant to both the NVRA and New Jersey's OPRA and accused the Secretary of violating both statutes. *Id.*, Ex. F, at 1–3. The letter demanded production of all the records requested in the March 2025 demands (the sixteen categories and 62 subparts) within eight days—*i.e.*, by July 11, 2025—and threatened legal action if they were not received by that date. *Id.*, Ex. F, at 3. Notably, the RNC's letter did *not* allege that the Secretary had violated the NVRA or OPRA with respect to the second set of records demanded by the RNC on June 16, 2025.[2] *See id.*, Ex. F.

Ms. Barber responded on July 11, 2025. In addition to producing the two sets of files referenced above, *see supra* at 5–6, Ms. Barber informed the RNC that the Division of Elections was continuing to work on the demands and would "provid[e] additional responses as soon as [it] can." Compl., Ex. G. Later that month, Ms. Barber followed up by producing the list of deleted voters referenced above, *see supra* at 5–6, accompanied by an 11-page letter explaining that the Division had required additional time to review the request given ongoing urgent election duties, Compl., Ex. H, at 1. Among other things, Ms. Barber also provided specific objections and responses to each of the RNC's eighteen document

---

[2] In fact, the July 3 letter made no mention whatsoever of the June 2025 demands. Compl., Ex. F. Nor did the RNC ever notify the Secretary, at any point before this lawsuit was filed, that the Secretary's response to the June 16, 2025 demands was believed to be in violation of the NVRA.

demands (and 62 subparts) that had been received to date. *Id.*, Ex. H, at 2–11. Ms. Barber explained that "additional responsive records either do not exist or cannot be feasibly produced by the Division." *Id.*, Ex. H, at 1.

### D.    The RNC sues in state court under OPRA.

Despite the Division of Elections' ongoing productions and communications, the RNC filed suit under OPRA in New Jersey Superior Court on July 17, 2025. *See* Verified Complaint, *Republican Nat'l Comm. v. Division of Elections*, Docket No. MER-L-1499-25 (N.J. Super. Ct. Law Div. July 17, 2025) (attached as Exhibit 1 to the Attorney Declaration of Liza B. Fleming ("Fleming Decl.")).[3] The suit alleged that the Division's failure to provide all records demanded in the RNC's above-described March 2025 demands, *see supra* at 4–6—as well as a *third* set of demands (not at issue here) sent on July 3, 2025[4]—violated OPRA.

---

[3] In considering the Secretary's motion to dismiss, the Court may take judicial notice of the filings in the RNC's state action. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999); *Grippi v. Keith*, No. 22-02640, 2024 WL 2058380, at *3 n.5 (D.N.J. May 8, 2024) (Castner, J.).

[4] The July 3, 2025 demands sought "Seal Audit Logs" for voting machines deployed in connection with the June 10, 2025 Primary Election—*i.e.*, logs containing the unique numbers on the seals attached to the voting machines as a security measure. The Division of Elections denied these requests because they sought information "which, if disclosed, could jeopardize computer security, or related technologies" and "would create a risk to the safety of persons, property, electronic data or software." *See* Fleming Decl., Ex. 1 at 67 (Ex. E to Verified Complaint,

In its complaint in the state action, the RNC certified that "no other action is … contemplated." Fleming Decl., Ex. 1, at 7. The RNC has never amended that certification, even though New Jersey's Rules of Court require parties to disclose in their initial pleadings "whether the matter in controversy is the subject of any other action pending in any court" or "whether any other action" is "contemplated." N.J. Ct. R. 4:5-1(b)(2).

On July 30, 2025, the state court entered an Order dismissing the RNC's complaint "without prejudice" based on the Division of Elections' production of responsive records within seven business days of the complaint. *See* Fleming Decl., Ex. 2. The court noted that, if the RNC contended that the Division's production was inadequate, the RNC could file a new pleading. *Id.* Rather than do so, the RNC filed a motion seeking reconsideration of the Order on August 19, 2025. *See id.*, Ex. 3. On December 11, 2025, the court granted the RNC's motion for reconsideration in part. *See id.*, Ex. 4. Specifically, the court reinstated the complaint only with respect to the RNC's claim challenging the Division's denial of the July 3, 2025 demands for Seal Audit Logs. *Id.* at 2. The court otherwise denied reconsideration, including as to the March 2025 demands. *Id.* The court scheduled a hearing on the RNC's order to show cause, which was held on February 18, 2026. *See id.*, Ex. 5. The next day, the court issued

*Republican Nat'l Comm. v. Division of Elections*, Docket No. MER-L-1499-25 (N.J. Super. July 17, 2025)).

an order dismissing with prejudice the RNC's only remaining claim regarding its July 3, 2025 demands for Seal Audit Logs. *See id.*, Ex. 6.

### E.    Four months later, the RNC sues in federal court under the NVRA.

Despite the previously filed state-court action, the RNC filed this separate suit under the NVRA on November 17, 2025. The complaint focuses on the same March 2025 demands at issue in the state action, and it asserts that, as to certain demands made in March and June 2025, the Division of Elections' nonproduction of all demanded documents "constitutes a failure to produce records under the NVRA," "violates the NVRA's public-disclosure provision," and "constitutes a violation of the NVRA." Compl. ¶¶ 21(a)–(f).

The complaint contains a single count: "Violation of the NVRA, 52 U.S.C. § 20507(i)." *Id.* at 9. And it conclusorily asserts that the RNC demands the records because:

> This information is essential for the RNC to assess the accuracy of the voter registration data it purchases from New Jersey for the purpose of engaging in voter communications, get-out-the-vote activities, and other political action. The information is also essential to the RNC's political efforts to assess whether New Jersey is conducting 'a general program that makes a reasonable effort to remove the names of ineligible voters' from its official voter registration lists, as required under the NVRA. The information is also essential to the RNC's efforts to ensure election integrity and advocacy for election administration improvements.

*Id.* ¶ 26 (citation omitted).

The complaint seeks both declaratory and injunctive relief. First, it demands a declaration that Defendant's purported "refusal to provide 'all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters,' violates Section 8 of the NVRA." *Id.* at 10 (Prayer for Relief). Second, it demands a declaration that any state law (without specifying any particular law) prohibiting Defendant from providing the demanded records "is preempted by federal law." *Id.* Third, it broadly requests an order requiring Defendant "to provide to the RNC all records reflecting, listing, or otherwise concerning individuals removed from New Jersey's voter registration list from March 25, 2023, through the date of this Court's order, for the reasons specified in the RNC's March 25, 2025, and June 16, 2025, requests." *Id.* at 11.

## **LEGAL STANDARDS**

In reviewing Defendant's motion to dismiss under Rule 12(b)(6), the Court must "assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (citation omitted). Similarly, on a motion to dismiss under Rule 12(b)(1), the plaintiff "bears the burden of establishing the elements of standing." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citation omitted). And courts "evaluating whether a complaint adequately pleads the

elements of standing" will apply the same standards as those for motions to dismiss under Rule 12(b)(6). *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

## ARGUMENT

## I.    The complaint fails to plausibly allege standing.

Standing "is an 'irreducible constitutional minimum,' without which a court would not have jurisdiction to pass on the merits of the action." *Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, a plaintiff "bears the burden of establishing: '(1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision.'" *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022) (citation omitted). Where, as here, the injury alleged is an "informational injury"—meaning a plaintiff failed to receive information to which she is (purportedly) entitled—it is not enough to merely claim a denial of information owed; the plaintiff must also show "some consequence caused by that omission." *Id.* at 212–13. As the Third Circuit explained in this exact NVRA context, a plaintiff "must establish a nexus among a downstream consequence, his alleged harm, and the interest Congress sought to protect." *Pub. Int. Legal Found. v. Sec'y*

*Commonwealth of Pa.*, 136 F.4th 456, 465 (3d Cir. 2025) ("*PILF*"). "Without such a nexus, a plaintiff can claim no informational injury standing." *Id.*

Here, the RNC appears to assume that because it has not received all the documents demanded, it has standing to maintain this suit. Binding precedent says otherwise. For each individual record demand and all the demands as a whole,[5] the complaint fails to satisfy each prong of the informational-injury analysis: the RNC has suffered no alleged harm, no alleged downstream consequences, and no nexus to the interest Congress sought to protect with the NVRA.

As to the alleged harm and downstream consequences, the RNC falls far short. Time and time again, the complaint merely asserts that Defendant has failed or refused to provide records demanded. *See, e.g.*, Compl. ¶¶ 12, 20, 21a–f, 22, 26, 28, 29. Beyond that, the complaint has only a conclusory assertion in a single paragraph that the demanded documents are somehow "essential" to the RNC. Compl. ¶ 26. But merely

_____

[5] Although framed as a single-count complaint, the RNC actually asserts several violations of the NVRA's public-inspection provision: one as to each document demand that the RNC deems insufficiently answered. *See* Compl. ¶ 21; *see also id.* at 1 (referencing "violations" of the NVRA). And because "standing is not dispensed in gross," *TransUnion LLC v. Ramirez*, 594 U.S. 431, 436 (2021), the RNC must establish its standing for each such demand. But, as explained below, the complaint contains no allegations supporting the RNC's standing as to any of the demands, let alone as to each of them.

stating why the RNC wants those documents is not enough. And the RNC does not allege that the lack of those documents has actually injured the RNC, let alone explain, in any specific, non-conclusory way, *how* the lack of these specific records has inflicted an injury or had an adverse effect on the RNC.

The complaint's entire premise is that the RNC wants certain documents, is purportedly entitled to them, and has not received them. But such a "freestanding informational injury claim" is insufficient for standing under Article III. *Campaign Legal Center v. Scott*, 49 F.4th 931, 937 (5th Cir. 2022). As the Third Circuit explained in no uncertain terms, private organizations like the RNC "are not deputized as private attorneys general empowered to enforce any and all [alleged] violations of a statute without regard to their personal stake in the matter." *PILF*, 136 F.4th at 468. For that reason, courts in this Circuit have consistently dismissed claims brought under the NVRA and similar statutes for lack of Article III standing where the plaintiffs similarly failed to show a nexus between an alleged harm, a downstream consequence, and an interest Congress sought to protect. *See, e.g.*, *1789 Found., Inc. v. Schmidt*, 781 F. Supp. 3d 282, 319–20 (M.D. Pa. 2025) (dismissing nonprofit's claim under the NVRA's public-inspection provision for lack of standing); *Doe-1 v. LexisNexis Risk Sols., Inc.*, No. 24-4566, 2025 WL 1334461, at *7 (D.N.J. May 7, 2025) (dismissing claims for information under the Fair Credit

Reporting Act due to lack of standing). This Court should do so too. Put simply: "No concrete harm, no standing." *TransUnion*, 594 U.S. at 442.

Just as significantly, the complaint does not allege that the nonproduction of the demanded records has affected an interest protected by the NVRA. The overriding purpose of the NVRA is to "increas[e] citizen participation in federal elections." *PILF*, 136 F.4th at 467. So while the complaint references a desire to "assess the accuracy of the voter registration data" for promoting "election integrity" and for various partisan political purposes, that is not enough. *See, e.g.*, Compl. ¶ 26. Congress did not enact the NVRA to help parties gain partisan advantage through the purchase of voter registration data. *See PILF*, 136 F.4th at 463 (explaining that the "greater purpose" of the "statutory scheme" is "the expansion of voter participation in federal elections"); 52 U.S.C. § 20501(b) (describing the NVRA's purposes). And, in the Third Circuit's words, the assessment of records—even to promote election integrity—is not "essential to a concrete interest protected by the statute." *PILF*, 136 F.4th at 467. Scrutinizing voting records, the court explained, "is not an enumerated purpose of the NVRA" nor does it "advance the expansion of voter registration and participation in federal elections." *Id*. In the end, the RNC does not allege any "concrete plans" to "imminently pursue a desired course of action bearing a nexus to an interest Congress sought to protect," let alone that those plans were "hindered only by" the "refusal to turnover the records."

*Id.* at 468. Without such plans, the RNC has no standing. *Id.*; *accord Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 632 (6th Cir. 2025).

For all those reasons, the RNC lacks standing. The complaint is required to set forth how the alleged deprivation of documents it demands has adversely affected the RNC, and how those adverse effects hinder some interest that Congress sought to protect through the NVRA. The complaint does not attempt to do this with respect to *any* of its records requests, much less each of them. So just as the public-interest organization lacked standing in *PILF*, the RNC lacks standing here. Ultimately, a "general desire to audit a state's NVRA records without concrete plans to act upon information contained in the records in a manner consistent with the purpose of the statute does not establish standing." *PILF*, 136 F.4th at 469. No matter how "admirable" an organization's "mission may be," it must have "a personal and constitutionally significant stake in the matter" to bring a claim in federal court. *Id.* at 468.

## II.    The complaint should be dismissed as precluded by the earlier-filed state-court action.

This federal action arises from the same dispute in the earlier-filed state-court action and should therefore be dismissed under New Jersey preclusion doctrine.

Federal courts apply the underlying state law to evaluate the preclusive effect of a state-court judgment. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). New Jersey recognizes a

muscular preclusion doctrine to ensure "the just and expeditious determination in a *single action* of the ultimate merits of an entire controversy between litigants." *McNeil v. Legis. Apportionment Comm'n*, 828 A.2d 840, 858 (N.J. 2003) (citation omitted). New Jersey preclusion law accordingly "encapsulates the state's longstanding policy judgment that 'the adjudication of a legal controversy should occur in one litigation in only one court.'" *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015) (citation omitted) (referencing the entire-controversy doctrine). As codified in New Jersey's Rules of Court, the "[n]on-joinder of claims required to be joined" shall "result in the preclusion of the omitted claims." N.J. Ct. R. 4:30A. And because "[a] plaintiff bringing an action based on two distinct legal theories is required to bring those claims together in one proceeding," preclusion "does not require commonality of legal issues." *DiTrolio v. Antiles*, 662 A.2d 494, 504 (N.J. 1995). Instead, the touchstone of the analysis is factual overlap. In determining whether a later-filed claim should be barred, "the central consideration" is whether the claims "arise from related facts or the same transaction or series of transactions." *Id.* at 502. There is no requirement that there be common legal issues; just common facts. In other words, the relevant question is "whether a sufficient commonality of facts undergirds each set of claims to constitute essentially a single controversy that should be the subject of only one litigation." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 266 (3d Cir. 2004) (quoting *DiTrolio*, 662 A.2d at 497).

Those principles squarely apply here. There is no dispute that the RNC's federal case and its state-court action arise from the same transaction and rest on the same core facts: the state-court action under OPRA is based on the same March 2025 demands at issue in this federal case. *Compare* Fleming Decl., Ex. 1 ¶ 25 (alleging that the Division of Elections violated OPRA "by not providing the RNC with copies of all documents requested by it through the [March 25, 2025] Voter List Maintenance Request"), *with* Compl. ¶ 28 ("Defendant's failure to provide the Voter List Maintenance Records in response to … the March 25 Request … is a violation of the NVRA."). That should end the inquiry.

This is especially true because the RNC's state-court action has ended.[6] In July 2025, the state court dismissed without prejudice the OPRA claims arising from the March 2025 demands. *See* Fleming Decl.,

---

[6] It would not matter if the state-court action were still pending. Although New Jersey preclusion law (and, in particular, the entire-controversy doctrine) most often bars a second action filed after the first has already concluded, courts apply the doctrine flexibly. *See, e.g.*, *Youssef v. Dep't of Health & Senior Servs.*, 524 F. App'x 788, 791 (3d Cir. 2013) (holding that the entire controversy doctrine applies when "one of two simultaneously pending suits conclude[s]"); *Brunetta v. Egg Harbor Twp. Sch. Dist.*, No. 22-7511, 2023 WL 5274529, at *5 n.4 (D.N.J. Aug. 16, 2023) (apply the entire-controversy doctrine to preclude a second action while the first action is still pending); *Archbrook Laguna, LLC v. Marsh*, 997 A.2d 1035, 1041 (N.J. App. Div. 2010) (explaining that a contrary rule, requiring that the prior action be concluded, "would encourage the type of forum shopping and fragmentation of controversies the entire controversy doctrine was intended to preclude").

Ex. 2. Although the state-court case remained pending following the Court's December 2025 reconsideration decision, the only claims still at issue concerned July 3, 2025 demands for "Seal Audit Logs," which are not part of this federal action. *Id.*, Ex. 3 (rejecting the RNC's request to reinstate "its claims as they relate to the March 25, 2025 Voter List Maintenance Request"). And on February 19, 2026, the state court dismissed those claims with prejudice, ending that case in its entirety.[7] *See id.*, Ex. 6. So the state-court decision is indisputably final. *See, e.g.*, *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016).

In the end, the RNC cannot escape its choice to first sue in state court. Both the state and federal case are based on the same underlying facts: the March 2025 demands. And because the state-court dismissal is a final adjudication of the claims arising from the March 2025 demands, it bars this second action in federal court. *See Brunetta*, 2023 WL 5274529, at *5.[8] *See id.* So the Court should dismiss this case.

---

[7] Even before those remaining, unrelated claims were dismissed, the RNC expressly agreed that the state lawsuit has been dismissed "as it pertains to the records which are the subject of this lawsuit," and the "RNC did not appeal," so "the state lawsuit is not 'ongoing' with respect to the records which are the subject of this lawsuit." ECF Doc. 13 at 2.

[8] If the state proceedings were still ongoing, New Jersey's preclusion doctrine would apply to that situation too. Beyond that, *Colorado River* abstention would also apply. *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009); *see also Pub. Int. Legal Found. v. Bennett*, No. 18-0981, 2019 WL 3819212, at *2 (S.D.

## III.    The complaint fails to state a claim for relief.

Beyond those fatal defects, the complaint should be dismissed for an additional reason: it fails to state a claim for relief under the NVRA.[9] Section 8 of the NVRA simply requires the Division of Elections to "make available for public inspection" records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). The RNC's attempt to transform this limited disclosure obligation into a sweeping, line-by-line audit of voter-registration records far exceeds what the statute requires. First, the RNC insists on the production of records that indisputably do not exist when the NVRA only obligates election officials to "make available" records that *already* exist. *Id.* Second, the statute's public-inspection provision requires only "public inspection and, where available, photocopying" of physical records.[10] *See*

Tex. Aug. 14, 2019) (abstaining from a dispute under the NVRA in favor of a state-court action brought under a state public-information statute). But the Court need not reach that issue since the state-court case has been finally resolved.

[9] Notably, the complaint contains no allegations of deficiencies for demand Nos. 2, 6, 7, 11, 12, and 13 made on March 25, 2025, or demand No. 2 made on June 16, 2025. *See* Compl. ¶ 21. And in its pre-motion letter to this Court, the RNC expressly abandoned any claim based on the June 2025 demands. *See* ECF Doc. 13. So the only demands at issue in this case are Nos. 1, 3–5, 8–10, and 14–16 made on March 25, 2025.

[10] Even when public inspection is appropriate, courts have recognized that redaction of sensitive information is permitted, including

*id.* It does not require—as the RNC has repeatedly demanded—the production of electronic documents on a rolling basis akin to civil litigation.[11]

### A. The RNC improperly demands the production of records that do not exist, requiring the Division of Elections to create new records.

Several of the RNC's demands improperly seek to compel the production of records that indisputably do not exist. This plainly exceeds the scope of the NVRA's public-inspection provision and is an independent basis for dismissal of these demands.

Multiple of the RNC's March 25, 2025, demands—Nos. 3–5 and 8–10—are sweeping requests for certain voter data. For example, one demand seeks "from March 2023," each "record utilizing, documenting or discussing information about voters **convicted of a crime** for the purpose of updating voter registrations exchanged between your office and the following offices": (a) State Department of Health; (b) State

---

dates of birth and social security numbers. *See, e.g.*, *United States v. Weber*, No. 25-09149, 2026 WL 118807, at *12 (C.D. Cal. Jan. 15, 2026) ("There is longstanding precedent that states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA and that this information is not relevant to the removal of ineligible voters from voting rolls.").

[11] While the State does not construe any of the RNC's demands to be seeking production of the State's voter lists, to the extent they are, such lists are not "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). So they are not subject to disclosure under the NVRA. *See United States v. Benson*, No. 25-1148, 2026 WL 362789, at *4–6 (W.D. Mich. Feb. 10, 2026).

Department of Corrections; (c) State Department of Motor Vehicles; (d) State Judiciary (including court clerks); (e) U.S. Social Security Administration; (f) U.S. Postal Service; (g) U.S. Citizenship & Immigration Service; (h) U.S. Department of Homeland Security (or any agency of the Department); (i) U.S. Judiciary System (including court clerks); and (j) U.S. Department of Justice (or any agency of the Department). Compl., Ex. A, at 3–4. In response to those demands, the Division of Elections explained that New Jersey's Statewide Voter Registration System ("SVRS") cannot generate a report containing the information requested. *See, e.g.*, *id.*, Ex. H, at 3–8. Although some of the underlying data may reside within existing registration records, it does not exist in the form demanded by the RNC—*i.e.*, as compiled lists or records of persons falling within their specified categories. *Id.* Nor is it possible for election officials to query the SVRS to automatically produce such compilations or otherwise generate them through electronic means. *Id.*

The RNC does not dispute these facts. Instead, it contends that even if the SVRS "is not pre-programmed to produce a report containing the responsive data alone, such information is clearly in Defendant's possession and must be disclosed under the NVRA." Compl. ¶ 21(b). That misconstrues the scope of the public-inspection provision. The NVRA allows for inspection of appropriate existing records; it does not obligate States to create new documents, perform bespoke data compilations or restructure electronic databases to satisfy a requester's preferred format.

22

This is evident from the plain text: the NVRA requires only that election officials "make available" records that *already* exist. 52 U.S.C. § 20507(i)(1). And it is well established that most federal public records laws—even the Freedom of Information Act—do not obligate a custodian "to create or retain documents" in response to a request; they only obligate the custodian "to provide access to those which it in fact has created and retained." *See, e.g.*, *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).

To be sure, if certain existing records are available for public inspection under the NVRA, the reviewer may organize that information as they choose at their own expense. But the NVRA does not require *election officials* to compile information from copious existing records (here, millions of individual voter-registration records) to create *new* records desired by the requester, such as lists of registrants who share particular attributes. Again, the public-inspection provision is not the equivalent of civil discovery, and it does not authorize requesters to burden election officials with responding to onerous interrogatories and document requests. And even in civil discovery, it "has been long and widely held that the Court cannot compel a party to create new documents" in response to requests for production. *Auto. Fin. Corp. v. DZ Motors, LLC*, No. 16-7955, 2018 WL 11446277, at *6 (D.N.J. Dec. 17, 2018).

Because the RNC does not dispute that the specific records requested in March 2025 demand nos. 3–5 and 8–10 do not exist, and

instead asserts an erroneous interpretation of the NVRA, the complaint should be dismissed as to any claim based on those demands.[12]

## B.    The RNC improperly demands the production of electronic records on a rolling basis.

In its March 2025 demands, the RNC also sought records from the Division of Elections in a manner not required by the NVRA. Specifically, the RNC improperly demanded the production of records "in electronic format" and "on a rolling basis." *See* Compl., Ex. A at 6 ("I am requesting these records in electronic format and on a rolling basis."); *id.*, Ex. D at 3 ("I am requesting these records in electronic format and on a rolling basis."). The complaint reiterates that the RNC has demanded the production of electronic records on a rolling basis. Compl. ¶ 11 ("The March 25

---

[12] In its pre-motion letter, the RNC expressly abandoned any claim based on the June 2025 demands. *See* ECF Doc. 13 ("RNC does not intend to seek relief with respect to those two categories of letters."). So the RNC waived any request for relief based on those demands. But even absent such a waiver, the NVRA bars any such claim because the RNC never provided written notice that it believed the Division's response to those specific demands violated the NVRA before filing suit. *See* 52 U.S.C. § 20510(b)(1); *Jud. Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399, 408 (M.D. Pa. 2021) (dismissing NVRA claim due to failure to provide proper notice); *see also Scott v. Schedler*, 771 F.3d 831, 835–36 (5th Cir. 2014) (holding that "NVRA provisions indicate that notice is mandatory" and that "failure to provide notice is fatal"); *1789 Found., Inc.*, 781 F. Supp. 3d at 315 n.11 (same); *Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1336 (S.D. Fla. 2017) (collecting cases). Because the RNC has *never* provided notice asserting an NVRA violation based on the June 16, 2025 demands, the complaint should be dismissed as to any claim based on those demands.

Request sought the Voter List Maintenance Records in electronic format and requested that Defendant produce them on a rolling basis."). But the NVRA's public-inspection provision imposes no such obligations. The statute requires only that States "make available for public inspection and, where available, photocopying at a reasonable cost," certain types of records. 52 U.S.C. § 20507(i)(1). It does not require production in electronic format, nor does it mandate rolling production. Because the RNC's demands exceeded what the NVRA requires, they were legally defective. The complaint therefore fails as a matter of law.

It is a "basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 408 (2017) (citation omitted). The inquiry begins and ends "with the text, giving each word its 'ordinary, contemporary, common meaning.'" *Id.* (citation omitted); *Murrin v. Comm'r of Internal Revenue*, 158 F.4th 527, 531 (3d Cir. 2025) (same).

Here, the ordinary, contemporary, and common meanings of the terms "public inspection" and "photocopying" do not encompass electronically producing a record. Indeed, it is well settled that "electronic production is neither public inspection nor photocopying; it is an entirely different method of disclosure." *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1332 (11th Cir. 2024); *see also Comm. for Mass. Voter Identification Ballot Question v. Galvin*, 790 F. Supp. 3d 1, 7 (D. Mass. 2025) ("[T]he NVRA does not mandate that voter

25

registration records be easily accessible, nor can a court compel a specific disclosure method simply because doing so may appear more practical or efficient."). "And as much sense as it would make to do so, Congress has not chosen to require electronic production—at least not in" the NVRA. *Birmingham Ministries*, 105 F.4th at 1332.

Instead, to "make something available for 'public' inspection" means "to make it available in public, or to the public, for close scrutiny." *Id.* This clarifies "what it *isn't*—copying an item or permanently handing it over." *Id.* When the NVRA was enacted in 1993, "the meaning of the phrase 'public inspection' … was widely understood to require 'only availability, not delivery'—and certainly not electronic delivery." *Id.* at 1333. So the RNC's attempt to obtain the litigation-like production of documents through the NVRA is inconsistent with the clear and unambiguous text of the NVRA's public-inspection provisions.

The surrounding statutory text reinforces the absurdity of requiring electronic production. If "public inspection" meant the production of records, then the statutory language that follows—"and, where available, photocopying at a reasonable cost"—would make no sense; there is no need to photocopy anything if it has already been provided electronically. *See* 52 U.S.C. § 20507(i)(1). So that interpretation contravenes the rule that courts "should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders

26

an element of the language superfluous." *Zahner v. Sec'y Pa. Dep't of Hum. Servs.*, 802 F.3d 497, 512 (3d Cir. 2015) (citation omitted).

In the same vein, one cannot "photocopy" an electronic file. *Birmingham Ministries*, 105 F.4th at 1332, 1334. So when the statute directs States to make certain records "available for public inspection and, where available, photocopying at a reasonable cost," it contemplates printed or graphic materials that would necessarily not be electronically produced. *Id.* ("An electronic database is not 'printed or graphic material.' And electronic files are not 'photographic reproductions' of the underlying records."). The RNC may believe it would be good public policy to require records in electronic form, but that is not the law. "The statute says what it says—or perhaps better put here, does not say what it does not say." *Id.* Courts, States, and private persons alike lack authority to "expand unambiguous [statutory] text beyond its plain command." *Id.* It is instead Congress's role to "resolve the 'awkward' gap in the NVRA between antiquated administrative tools and sophisticated software that states use to operate and maintain voter databases today." *ACORN Int'l v. State by & through Jacobsen*, 556 P.3d 515, 546–47 (Mont. 2024).

Congress knows how to do exactly that. Just three years after enacting the NVRA, Congress updated the Freedom of Information Act to require federal agencies "to make records available 'by computer telecommunications' or 'other electronic means,'" and to provide those records "in any form or format requested by the person if the record is readily

reproducible by the agency in that form or format." *Birmingham Ministries*, 105 F.4th at 1333 (quoting Pub. L. No. 104-231, §§ 4–5, 110 Stat. 3048, 3049–50 (1996)). In stark contrast, the Congress of the 1990s did not require electronic production under the NVRA. And in the more than thirty years since, it has not amended the NVRA's public-inspection provision to require it. So the RNC's demand for an order directing "Defendant to provide to the RNC" certain electronic records should be rejected and its case should be dismissed. *See* Compl. at 11 (Prayer for Relief).

## <u>CONCLUSION</u>

The Court should grant Defendant's motion and dismiss.


Dated: February 20, 2026         Respectfully submitted,


                                 JENNIFER DAVENPORT
                                 ACTING ATTORNEY GENERAL OF NEW
                                 JERSEY

                                 /s/ *Liza B. Fleming*
                                 Liza B. Fleming
                                 Deputy Attorney General
                                 (862) 350-5800
                                 Liza.Fleming@njoag.gov

                                 Stephen Ehrlich
                                 Deputy Solicitor General
                                 R.J. Hughes Justice Complex,
                                 25 Market Street, P.O. Box 080
                                 Trenton, New Jersey 08625

Robert A. Wiygul
Jason A. Levine
Hangley Aronchick Segal Pudlin & Schiller
1415 Route 70 East, Suite 405
Cherry Hill, NJ 08034
*Attorneys for Defendant*