Josiah Contarino (NJ Bar No. 003962013)
**CONTARINO ROTH LLC**
50 Park Place, Suite 1105
Newark, NJ 07102
(973) 200-1926
jcontarino@contarinoroth.com

*Attorneys for Plaintiff*
*Republican National Committee*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DALE G. CALDWELL, in his official capacity as Secretary of State of New Jersey,<br><br>　　　　　Defendant. | No. 25-cv-17612 (GC) (JTQ)<br><br>Electronically Filed<br><br>Motion Return Date:<br>April 20, 2026<br><br>Assigned to:<br>The Hon. Georgette Castner |

## BRIEF IN OPPOSITION TO DEFENDANT DALE G CALDWELL'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... iii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................3

    I.     The NVRA's Public-Inspection Mandate .................................................3

    II.    The RNC's Records Requests.....................................................................4

    III.   Defendant's Delayed and Incomplete Response ........................................5

    IV.   The RNC's Pre-Suit Statutory Notice.........................................................6

    V.    The State-Court OPRA Action....................................................................6

    VI.   This Federal Action .....................................................................................8

LEGAL STANDARD .........................................................................................8

ARGUMENT .....................................................................................................9

    I.     The RNC Has Standing to Enforce Its Right to Voter List Maintenance
Records Under the NVRA ...........................................................................9

         A.   The Denial of the RNC's Statutory Right to Information
Constitutes a Concrete Injury-in-Fact................................................9

         B.   The Complaint Alleges Concrete Downstream Consequences and
a Nexus to Interests Congress Sought to Protect ............................10

         C.   The RNC Is Distinguishable from PILF .........................................14

         D.   The RNC's Injury Is Fairly Traceable to Defendant's Conduct
and Redressable by This Court ........................................................16

    II.    The Entire Controversy Doctrine Does Not Bar This Action.....................17

         A.   The Entire Controversy Doctrine Does Not Apply to OPRA
Actions .............................................................................................18

         B.   The RNC Could Not Have Asserted Its NVRA Claim at the Time
It Filed the OPRA Action ................................................................20

         C.   The State-Court Dismissal Was Not a Merits Adjudication of the
NVRA Claim....................................................................................23

         D.   In Any Event, the NVRA and OPRA Claims Vindicate Different
Substantive Rights and Are Distinct ...............................................24

         E.   Equitable Considerations Weigh Against Preclusion.....................26

i

III.   The Complaint States a Claim for Relief Under the NVRA .......................27

    A.   The Requested Records "Exist" Within Defendant's Electronic Databases and Are Subject to Disclosure.........................................27

    B.   The NVRA Does Not Permit a State to Refuse Disclosure on Grounds of Overbreadth or Undue Burden.....................................29

    C.   The Manner-of-Production Issue Does Not Warrant Dismissal .....30

    D.   Each Disputed Request Seeks Records Within the Scope of § 20507(i)(1) ................................................................................33

    E.   Defendant's Characterization of the RNC's Requests as a "Sweeping Audit" Is Irrelevant .......................................................35

CONCLUSION ...................................................................................................36

# TABLE OF AUTHORITIES

## Cases

*700 Hwy. 33 LLC v. Pollio*,
23 A.3d 446 (N.J. Super. Ct. App. Div. 2011)....................................................26

*Arizona v. Inter Tribal Council of Ariz.*,
570 U.S. 1 (2013) ............................................................... 6, 26, 30

*Ballentine v. United States*,
486 F.3d 806 (3d Cir. 2007) .......................................................................8

*Bank Leumi USA v. Kloss*,
233 A.3d 536 (N.J. 2020)...........................................................................18

*Bost v. Illinois State Bd. of Elections*,
146 S. Ct. 513 (2026) .................................................................................13

*Cafferta v. Peyser*,
597 A.2d 1101 (N.J. Super. Ct. App. Div. 1991)...........................................20

*California v. ARC Am. Corp.*,
490 U.S. 93 (1989)...................................................................................25

*Charles H. Wesley Educ. Found. v. Cox*,
408 F.3d 1349 (11th Cir. 2005) ................................................................30

*Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*,
662 A.2d 509 (N.J. 1995)..........................................................................21

*Cottrell v. Alcon Lab'ys*,
874 F.3d 154 (3d Cir. 2017) ........................................................................8

*Courier News v. Hunterdon Cnty. Prosecutor's Off.*,
817 A.2d 1017 (N.J. Super. Ct. App. Div. 2003) .........................................19

*Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*,
203 A.3d 133 (N.J. 2019)..........................................................................18

*DiTrolio v. Antiles*,
662 A.2d 494 (N.J. 1995)..........................................................................24

*FEC v. Akins*,
524 U.S. 11 (1998) ...................................................................................10

*Fields v. Thompson Printing Co.*,
363 F.3d 259 (3d Cir. 2004) ......................................................................24

*Greater Birmingham Ministries v. Secretary of State for Alabama*,
    105 F.4th 1324 (11th Cir. 2024) ....................................................... 30, 32

*Havens Realty Corp v. Coleman*,
    455 U.S. 363 (1982) .................................................................................10

*Heir v. Delaware River Port Auth.*,
    218 F. Supp. 2d 627 (D.N.J. 2002) ........................................................18

*Higgins v. Thurber*,
    992 A.2d 50 (N.J. Super. Ct. App. Div. 2010) ......................................26

*Highland Lakes Country Club & Cmty. Ass'n v. Nicastro*,
    966 A.2d 1102 (N.J. Super. Ct. App. Div. 2009)....................................21

*Judicial Watch, Inc. v. Lamone*,
    399 F. Supp. 3d 425 (D. Md. 2019) ........................................................32

*Kelly v. RealPage Inc.*,
    47 F.4th 202 (3d Cir. 2022) .......................................................................9

*Kissinger v. Reporters Committee for Freedom of the Press*,
    445 U.S. 136 (1980)............................................................................ 28, 29

*K-Land Corp. No. 28 v. Landis Sewerage Auth.*,
    800 A.2d 861 (N.J. 2002)..........................................................................18

*Kremer v. Chem. Constr. Corp.*,
    456 U.S. 461 (1982)..................................................................................21

*Mi Familia Vota v. Fontes*,
    129 F.4th 691 (9th Cir. 2025)...................................................................31

*Oneok, Inc. v. Learjet, Inc.*,
    575 U.S. 373 (2015)..................................................................................25

*Peduto v. City of N. Wildwood*,
    878 F.2d 725 (3d Cir. 1989) .....................................................................21

*Project Vote, Inc. v. Kemp*,
    208 F. Supp. 3d 1320 (2016).....................................................................32

*Project Vote/Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) ....................................................................31

*Pub. Citizen v. DOJ*,
    491 U.S. 440 (1989)..................................................................................10

*Pub. Int. Legal Found. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ........................................................... 28, 31, 36

iv

*Pub. Int. Legal Found. v. Chapman*,
595 F. Supp. 3d 296 (M.D. Pa. 2022), *vacated and remanded on other grounds*, *PILF*, 136 F. 4th 456 (3d Cir. 2025)......................................................32

*Pub. Int. Legal Found. v. Dahlstrom*,
673 F. Supp. 3d 1004 (D. Alaska 2023) ...............................................................31

*Pub. Int. Legal Found. v. Griswold*,
No. 21-cv-03384-PAB-MEH, 2023 WL 6376706 (D. Colo. Sept. 29, 2023) .....31

*Pub. Int. Legal Found. v. Knapp*,
749 F. Supp. 3d 563 (D.S.C. 2024) .....................................................................31

*Pub. Int. Legal Found. v. North Carolina*,
996 F.3d 257 (4th Cir. 2021) ...............................................................................31

*Public Interest Legal Foundation v. Benson*,
136 F.4th 613 (6th Cir. 2025)........................................................................ 14, 15

*Public Interest Legal Foundation v. Secretary Commonwealth of Pennsylvania*,
136 F.4th 456 (3d Cir. 2025) ........................................................... 10, 12, 14, 15

*Republican Nat'l Comm. v. Div. of Elections*,
No. MER-L-1499-25 (N.J. Super. Law Div.) .......................................................6

*Rhodes v. Twp. of Saddle Brook*,
980 F. Supp. 777 (D.N.J. 1997) ..........................................................................18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..............................................................................................10

*St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*,
898 F.3d 351 (3d Cir. 2018) ..................................................................................9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................................................10

*United States ex rel. Charte v. Am. Tutor, Inc.*,
934 F.3d 346 (3d Cir. 2019) ................................................................................18

*United States v. Locke*,
529 U.S. 89 (2000)................................................................................................25

*Voter Reference Found., LLC v. Torrez*,
727 F. Supp. 3d 1014 (D.N.M. 2024) ............................................................ 28, 31

*Watkins v. Resorts Int'l Hotel and Casino, Inc.*,
591 A.2d 592 (N.J. 1991)......................................................................................21

v

*Watters v. Bd. of Sch. Dirs. of City of Scranton*,
  975 F.3d 406 (3d Cir. 2020) ....................................................................................9

*Weichsel v. JP Morgan Chase Bank, N.A.*,
  65 F.4th 105 (3d Cir. 2023) ....................................................................................8

*Wilson v. USI Ins. Serv. LLC*,
  57 F.4th 131 (3d Cir. 2023) ....................................................................................9

**Statutes**

52 U.S.C. § 20501(b) .................................................................................................12

52 U.S.C. § 20501(b)(1) ...................................................................................... 3, 4, 15

52 U.S.C. § 20501(b)(2) ...................................................................................... 4, 12, 22

52 U.S.C. § 20501(b)(3) ...............................................................................................15

52 U.S.C. § 20507(a)(4) ...............................................................................................12

52 U.S.C. § 20507(d) ...................................................................................................34

52 U.S.C. § 20507(i)(1) ........................................................................................ passim

52 U.S.C. § 20510(b) ............................................................................................ 9, 10

52 U.S.C. § 20510(b)(1) ........................................................................................ 6, 22

52 U.S.C. § 20510(b)(2) ...............................................................................................4, 7

N.J.S.A. 47:1A-1.1 .....................................................................................................24

N.J.S.A. 47:1A-5(g) ...................................................................................................24

N.J.S.A. 47:1A-6 ............................................................................................ 6, 7, 19, 23

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................17

**Treatises**

Pressler & Verniero, *Current N.J. Court Rules* (2019) ............................................18

**Constitutional Provisions**

U.S. Const. art. VI, § 2 .................................................................................................25

**INTRODUCTION**

The National Voter Registration Act mandates that each state "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). The Secretary of State of New Jersey must comply with that legal requirement and make public records in his possession available to Plaintiff.

For a year, the Republican National Committee ("RNC") has sought voter list maintenance records from New Jersey's Division of Elections. In response to the RNC's **sixteen** categories of requests, Defendant produced records responsive to only **two** categories—two spreadsheets identifying inactive and deleted voters (with no reason given)—while refusing to produce anything in response to the remaining **fourteen** categories.[1] Defendant's refusals relied on state-law objections under the New Jersey Open Public Records Act ("OPRA"), such as overbreadth and undue burden, that have no application under the NVRA's federal disclosure mandate.

Defendant's motion to dismiss chiefly advances three arguments. For the following reasons, none has merit.

---

[1] Defendant also provided a third spreadsheet, containing data responsive to one category of records identified in the RNC's June 16, 2025, request. At present, the RNC does not seek to remedy any deficiencies in Defendant's response to that request.

*First*, Defendant contends that the RNC lacks Article III standing. But the NVRA confers an explicit right to access voter list maintenance records, and the denial of that right constitutes a cognizable informational injury—particularly where, as here, the requesting party has concrete and specific plans to use the records to conduct voter registration drives, contact voters at significant expense, monitor elections, and assess state compliance with federal list-maintenance requirements.

*Second*, Defendant argues that the earlier-filed state-court OPRA action precludes this federal suit, asserting the RNC's unique federal claim under the NVRA. But OPRA is a wholly separate state law, establishing a distinct right and claim to public records. OPRA sets forth a different statutory framework with its own unique legal procedures and different legal standards, which conflict with the NVRA's required procedures. For example, the RNC could not have asserted its NVRA claim at the time it filed the OPRA action, which it was required to file within forty-five days of a denial, because the NVRA mandates a ninety-day pre-suit notice period, which had not elapsed by the time of the forty-five-day deadlines set by OPRA. In any event, the portion of the state OPRA action relevant here was dismissed on technical and procedural grounds unique to OPRA and without prejudice, without any adjudication of the RNC's right to the public records at issue here.

*Third*, Defendant contends that the Complaint fails to state a claim because the NVRA does not require the creation of records or electronic production. This argument misconstrues both the RNC's requests and the statute. The RNC seeks **existing** records that Defendant admittedly maintains in its electronic databases, and whether the ultimate remedy involves physical inspection or electronic production is a remedial question, not a basis for dismissal at the pleading stage.

For these reasons, the motion to dismiss should be denied.

## BACKGROUND

### I.    The NVRA's Public-Inspection Mandate

Congress enacted the NVRA in 1993 to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," among other things. 52 U.S.C. § 20501(b)(1). To ensure public oversight of voter list maintenance, Section 8(i) of the NVRA requires that each state "shall . . . make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* § 20507(i)(1). The statute exempts only two narrow categories of information from this disclosure requirement: (1) records "relat[ing] to a declination to register to vote" and (2) records relating to "the identity of a voter registration agency through which any particular voter is registered." *Id.* The NVRA

3

also imposes a record-retention obligation, requiring states to maintain these records for "at least 2 years." *Id.*

Most significant to this lawsuit, Congress provided a private right of action for "[a] person who is aggrieved by a violation of" the NVRA, subject to a pre-suit notice requirement of at least 90 days before filing suit. *Id.* § 20510(b)(1)–(2). And Congress provided that a party seeking relief for a failure to disclose voter list maintenance records *must* bring its action "in an appropriate district court." *Id.* § 20510(b)(2).

## II.    The RNC's Records Requests

On March 25, 2025, the RNC submitted a detailed request for voter list maintenance records to the Secretary of State, expressly invoking its rights under the NVRA. Compl., Ex. A. The request identified sixteen categories of records, all relating to "programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* at 2–5. The categories included records concerning voter removal programs, address confirmation mailings, information exchanged with state and federal agencies regarding deceased, relocated, and criminally convicted voters, inter-agency communications about list maintenance procedures, and complaints received about voter roll inaccuracies. *Id.*

The request letter explained that the RNC is "conducting a review of each state's programs and practices for maintaining accurate voter rolls" because the

4

"RNC's voter registration drives, get-out-the-vote drives, and election integrity efforts depend upon the processes implemented by each state to ensure its voter rolls are accurate." *Id.* at 1.

### III.    Defendant's Delayed and Incomplete Response

For over two months after the RNC submitted the March 25 request, Defendant's office provided no formal response whatsoever. Compl. ¶ 12. It was not until June 18, 2025, that the Division of Elections even acknowledged receipt of the request. *Id.* ¶ 14. Eventually, in July 2025, Defendant produced two spreadsheets— one listing inactive voters and one listing deleted voters—partially responsive to **two** of the **sixteen** categories of requested records. *Id.* ¶ 19, Ex. G.

On July 29, 2025, the Division of Elections sent an eleven-page letter providing item-by-item objections to the RNC's requests. *Id.* Ex. H. Defendant's objections relied almost exclusively on state-law grounds under OPRA— overbreadth, undue burden, lack of specificity, and similar grounds. *Id.* Critically, Defendant did not contend that the requested records fell outside the scope of the NVRA's records-access provision. Rather, Defendant's position was that the requests were improper solely under OPRA's limitations and that certain records could not easily be compiled from its existing databases. *Id.*

**IV.    The RNC's Pre-Suit Statutory Notice**

On July 3, 2025, the RNC served statutory notice on the Secretary of State as required by 52 U.S.C. § 20510(b)(1), identifying the NVRA violation and demanding compliance. Compl., Ex. F. The notice letter explained that "[b]ecause your office has failed to provide the requested records, New Jersey is currently in violation of the NVRA." *Id.* at 2. The letter further explained that any state law conflicting with the NVRA's disclosure requirements "is without force" under the Supremacy Clause. *Id.* (citing *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 9 (2013) ("*ITCA*")). The statutory ninety-day waiting period elapsed on October 1, 2025, well before the RNC filed its complaint on November 17, 2025.

**V.    The State-Court OPRA Action**

On July 17, 2025, within the forty-five-day statute of limitations for OPRA claims, *see* N.J.S.A. 47:1A-6, the RNC filed a complaint in New Jersey Superior Court for Mercer County, alleging violations of OPRA based on the same March 25, 2025, request. *Republican Nat'l Comm. v. Div. of Elections*, No. MER-L-1499-25 (N.J. Super. Law Div.). The state-court action asserted only OPRA claims. It did not assert any claim under the NVRA. At the time the RNC filed the OPRA action, the NVRA's mandatory ninety-day pre-suit notice period had not yet elapsed, and, therefore, the RNC could not have brought its federal claim within the OPRA forty-

five-day statute of limitations, and, in any event, the NVRA provides for all claims to be brought in a federal district court. *See* 52 U.S.C. § 20510(b)(2).

On July 30, 2025, the state court dismissed the OPRA complaint without prejudice under a unique OPRA safe-harbor provision, N.J.S.A. 47:1A-6, after Defendant represented that he had "issued a full and final response" to the RNC's requests. Declaration of Liza B. Fleming ("Fleming Decl."), Dkt. No. 17-2, Ex. 2. The RNC was not given an opportunity to respond before dismissal. *See* Fleming Decl., Ex. 3 at 118.

The RNC moved for reconsideration. On December 11, 2025, the state court granted reconsideration in part—reinstating only an unrelated claim concerning a separate request (dated July 3, 2025) for a Seal Audit Log—but denied reconsideration as to the March 25 Voter List Maintenance Request claims. Fleming Decl., Ex. 4. The court's denial of reconsideration on the Voter List Maintenance claims rested on its interpretation of OPRA's safe-harbor provision. Because the NVRA claim was not before the state court, it did not address, analyze, or rule upon the NVRA's requirements of the RNC's rights under the NVRA. *Id.* at 8. Because the portion of the OPRA lawsuit governing the requests at issue here was dismissed without prejudice, the records at issue here were never analyzed by the state court. On February 19, 2026, the state court dismissed the remaining Seal Audit Log claims

7

with prejudice on grounds of mootness. Fleming Decl., Ex. 6 at 9. Those claims are not at issue in this action.

## VI.    This Federal Action

The RNC filed its complaint on November 17, 2025, asserting a single claim under 52 U.S.C. § 20507(i). The Complaint identifies specific deficiencies in Defendant's responses to Requests Nos. 1, 3–5, 8–10, and 14–16 of the March 25, 2025, request. Compl. ¶ 21. In its pre-motion conference letter, the RNC confirmed that its claims relate exclusively to the March 25 requests. Dkt. No. 13.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(1) challenging standing on the face of the complaint, the court must "accept as true all material allegations set forth in the complaint" and "construe those facts in favor of the nonmoving party." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). In assessing whether a plaintiff has met its burden at the pleading stage, the Court must "'separate [its] standing inquiry from any assessment of the merits of the plaintiff's claim,' and 'assume for the purposes of our standing inquiry that a plaintiff has stated valid legal claims.'" *Weichsel v. JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 111 (3d Cir. 2023) (quoting *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017)).

On a motion to dismiss under Rule 12(b)(6), the Court must "assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to

8

relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). All well-pleaded factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *Id.*

## ARGUMENT

### I.    The RNC Has Standing to Enforce Its Right to Voter List Maintenance Records Under the NVRA

To establish Article III standing, a plaintiff must demonstrate "(1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision." *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022) (quoting *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 356 (3d Cir. 2018)). The RNC satisfies each element.

### A.    The Denial of the RNC's Statutory Right to Information Constitutes a Concrete Injury-in-Fact

The NVRA confers on "any person" the right to inspect and copy voter list maintenance records. 52 U.S.C. § 20507(i)(1). Congress reinforced this right by providing a private cause of action for any "person who is aggrieved by a violation" of the statute. *Id.* § 20510(b). The Supreme Court has long recognized that the denial of a statutory right to information constitutes a concrete injury sufficient for Article III purposes. In *Federal Election Commission v. Akins*, the Court held that voters suffered an informational injury when the FEC declined to require a political committee to disclose information that a federal statute required to be made public.

9

524 U.S. 11, 21 (1998). There, the Court noted that it had "previously held that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id.* (citing *Pub. Citizen v. DOJ*, 491 U.S. 440, 449 (1989), and *Havens Realty Corp v. Coleman*, 455 U.S. 363, 373–74 (1982)). The Court explained that the "inability to obtain information" that a statute requires to be disclosed is a "concrete and particular" injury. *Id.*

Similarly, in *Spokeo, Inc. v. Robins*, the Court confirmed that intangible injuries—including informational ones—can be concrete when they involve the deprivation of a right that Congress has elevated to legally cognizable status. 578 U.S. 330, 341–42 (2016) (citing *Akins*, 524 U.S. at 20–25). The NVRA's public-inspection provision does precisely that: It creates a mandatory obligation on states to disclose voter list maintenance records and gives private parties a cause of action to enforce that obligation. 52 U.S.C. §§ 20507(i)(1), 20510(b). The RNC's injury is thus not a "bare procedural violation" of the sort that *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), found insufficient. It is the denial of a substantive right to information that Congress specifically conferred.

**B.    The Complaint Alleges Concrete Downstream Consequences and a Nexus to Interests Congress Sought to Protect**

Defendant relies principally on *Public Interest Legal Foundation v. Secretary Commonwealth of Pennsylvania*, 136 F.4th 456, 465 (3d Cir. 2025) ("*PILF*"), for the proposition that an NVRA plaintiff must establish a "nexus among a downstream

10

consequence, his alleged harm, and the interest Congress sought to protect." Mot. 12–16. Because the RNC **uses** New Jersey's voter registration data to conduct its core political activities, the RNC readily satisfies that test. Defendant's contrary argument depends on an incomplete reading of the Complaint and a gross mischaracterization of the RNC's interests and political mission.

**First**, the Complaint and its attached exhibits demonstrate that the RNC has concrete, ongoing programs that are directly impaired by the lack of voter list maintenance information. The March 25, 2025, request letter—attached as Exhibit A to the Complaint—explains that the RNC uses New Jersey's voter registration lists to engage in its political mission. As the Complaint states: The "RNC and state and local Republican parties assist thousands of citizens each year to register to vote and devote substantial resources to get-out-the-vote efforts in reliance upon public voter registration lists." Compl., Ex. A at 1. It further explains, as Defendant acknowledges, that the "RNC's voter registration drives, get-out-the-vote drives, and election integrity efforts depend upon the processes implemented by each state to ensure its voter rolls are accurate." *Id.*; Mot. 10 (quoting Compl. ¶ 26). Because the RNC relies upon the accuracy of New Jersey's registration lists to contact voters, identify voters, and spend limited resources on voter advocacy, it is harmed if the voter lists are inaccurate. These are concrete activities that are directly hindered by the RNC's inability to obtain the list maintenance records at issue.

11

Further, as Defendant recognizes, an explicit purpose of the NVRA is to "expand voter participation in federal elections." Mot. 15 (quoting *PILF*, 136 F.4th at 463; citing 52 U.S.C. § 20501(b)). Because the RNC expressly engages in direct voter registration activities, and because the RNC relies on voter registration records to do so, Defendant's limitation of the RNC's ability to access such records will decrease "the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501(b)(2). Accordingly, Defendant's conduct, as alleged in the Complaint, interferes with the congressional purposes underlying the NVRA and the RNC's efforts to effectuate them.

**Second**, the Complaint alleges that the "RNC is committed to a fair electoral process that ensures both access to the ballot and election integrity" and that the withheld records are "essential to the RNC's political efforts to assess whether the State of New Jersey is conducting 'a general program that makes a reasonable effort to remove the names of ineligible voters' from its official voter registration lists, as required under the NVRA." Compl. ¶ 26 (quoting 52 U.S.C. § 20507(a)(4)), Ex. A at 1. The Complaint further alleges that the information is "essential to the RNC's efforts to ensure election integrity and advocacy for election administration improvements." *Id.* ¶ 26. And, as the U.S. Supreme Court has recently held, "[a]n unfair and inaccurate election plainly affects those who compete for the support of the people in a different way than it affects the people who lend their support." *Bost*

12

*v. Illinois State Bd. of Elections*, 146 S. Ct. 513, 520 (2026). Like a candidate, the RNC is an election participant with direct and concrete competitive political interests in the fair and accurate administration of elections by election officials.

The downstream consequences of information deprivation to the RNC are specific and concrete. Without voter list maintenance records, the RNC cannot determine whether New Jersey is adequately removing deceased, relocated, or otherwise ineligible registrants from its rolls. This directly impairs the RNC's ability to plan and allocate resources for voter identification, voter advocacy, and voter registration drives, because the RNC cannot identify areas where list maintenance deficiencies may result in inaccurate voter data that undermines its outreach efforts. It also impairs the RNC's election monitoring activities, which rely on understanding how the state maintains its voter rolls to detect potential irregularities, another core activity of the RNC as an election participant.[2]

---

[2] Defendant asserts that the Complaint, "[a]lthough framed as a single-count complaint, . . . actually asserts several violations of the NVRA's public-inspection provision." Mot. 13 n.5. Defendant argues that the RNC must, therefore, demonstrate standing as to each individual request Defendant has failed to fulfil. This argument fails because it mischaracterizes the Complaint. It is true that "standing is not dispensed in gross." *TransUnion*, 594 U.S. at 431. But that does not mean that a plaintiff must demonstrate an injury that flows from every factual circumstance that informs its claim. "[R]ather, plaintiffs must demonstrate standing for each *claim* that they press . . . ." *Id.* Here, the RNC has a single claim: Defendant has failed to fulfill the RNC's March 25 request in accordance with his obligations under federal law. *See* Compl. ¶¶ 24–29. The fact that Defendant's failure to do so can be shown by his refusal to fulfill several of the RNC's individual requests does not harm the RNC's standing. Instead, it strengthens it.

### C.    The RNC Is Distinguishable from PILF

Defendant's standing argument rests almost entirely on the analogy between the RNC and the plaintiff in *PILF*. *See* Mot. 14–16. But the analogy does not hold. In *PILF*, the Third Circuit found that the Public Interest Legal Foundation—a nonprofit organization—lacked standing because it failed to allege "concrete plans to act upon information contained in the records in a manner consistent with the purpose of the statute[.]" 136 F.4th at 469. The court emphasized that PILF had articulated only a "general desire to audit a state's NVRA records" without specifying how it would use the records to advance the interests Congress sought to protect. *Id.*

Defendant also cites *Public Interest Legal Foundation v. Benson*, 136 F.4th 613, 632 (6th Cir. 2025), for the proposition that a "general desire to audit" voter records is insufficient for standing. Mot. 16. But *Benson*, like *PILF*, involved a public-interest legal organization, not a major political party with concrete, ongoing voter engagement programs. The Sixth Circuit's analysis was expressly tied to the particular plaintiff's failure to demonstrate concrete plans to use the requested records in a manner connected to the NVRA's purposes. 136 F.4th at 632 (citing *PILF*, 136 F.4th at 468).

The RNC is fundamentally different. The RNC is not a single-issue advocacy organization seeking records for the abstract or academic purpose of auditing

14

government compliance. It is the national committee of one of the two major political parties in the United States. Its core activities—conducting voter registration drives, managing voter outreach programs, and monitoring elections—are the very activities that the NVRA's voter list maintenance and public-inspection provisions were designed to protect. The NVRA was explicitly enacted to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," 52 U.S.C. § 20501(b)(1), and "to protect the integrity of the electoral process," *id.* § 20501(b)(3). The RNC's voter engagement and election integrity activities are central to its political mission, rely upon the accuracy of New Jersey's voter registration lists, and directly advance these congressionally declared purposes.

Neither *PILF* nor *Benson* held that a statutory right to information under the NVRA can never give rise to standing. Both decisions turned on the particular plaintiffs' failures to allege concrete plans to use the information for anything other than academic audit purposes. *See PILF*, 136 F.4th at 456; *Benson*, 136 F.4th at 632. Indeed, the Third Circuit in *PILF* expressly acknowledged that an organization could demonstrate standing by alleging "concrete plans to imminently pursue a desired course of action bearing a nexus to an interest Congress sought to protect." 136 F.4th at 468 (citation and internal quotation marks omitted). The RNC has done precisely that. Its Complaint and attached exhibits set forth specific, ongoing programs—voter

15

contacts, voter turnout, voter registration drives, election monitoring, and NVRA compliance reviews—that depend on the very records Defendant has refused to produce for an entire year. The RNC needs the information to engage in these activities and allocate resources for effective political engagement, not a "general desire to audit."

Defendant's assertion that Congress "did not enact the NVRA to help parties gain partisan advantage through the purchase of voter registration data," Mot. 15, is a strawman. The RNC does not seek "partisan advantage" through these records. It seeks to exercise a right that the NVRA confers on "any person." 52 U.S.C. § 20507(i)(1). The statute draws no distinction between political parties, advocacy organizations, journalists, or private citizens. And the RNC's planned uses— assessing the accuracy of voter rolls, contacting voters, conducting registration drives, and monitoring election administration—are precisely the types of activities that the public-inspection provision was designed to enable.

### D.    The RNC's Injury Is Fairly Traceable to Defendant's Conduct and Redressable by This Court

The remaining elements of standing are straightforward. The RNC's informational injury is directly traceable to Defendant's refusal to make the requested records available for public inspection, as required by the NVRA. And a favorable judicial decision—ordering Defendant to comply with § 20507(i)(1)— would redress that injury by providing the RNC access to the records it has been

16

denied. Defendant does not appear to dispute traceability or redressability, and neither element presents any difficulty here.

*    *    *

The standing inquiry at the motion-to-dismiss stage requires the Court to accept the Complaint's well-pleaded allegations as true and draw all reasonable inferences in the RNC's favor. Under that standard, the RNC has more than adequately alleged the requisite injury, downstream consequences, and nexus to congressionally protected interests.

Finally, to the extent the Court has any concern about the sufficiency of the standing allegations, the appropriate remedy is not dismissal with prejudice but rather leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). The RNC is prepared to supplement the Complaint with additional factual detail regarding its concrete plans for the use of the requested records, including through a declaration from an RNC official, if the Court deems it necessary.

## II.    The Entire Controversy Doctrine Does Not Bar This Action

Defendant argues that this federal NVRA action is precluded by the earlier-filed state-court OPRA action under New Jersey's entire controversy doctrine. Mot. 16–19. This argument fails for multiple independent reasons.

17

## A.    The Entire Controversy Doctrine Does Not Apply to OPRA Actions

The entire controversy doctrine is "an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." *Bank Leumi USA v. Kloss*, 233 A.3d 536, 541 (N.J. 2020) (quoting *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 203 A.3d 133, 146–47 (N.J. 2019)). The equitable nature of the doctrine "bars its application where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 868 (N.J. 2002) (citation omitted); *accord* Pressler & Verniero, *Current N.J. Court Rules*, cmt. 3.2 on R. 4:30A (2019). It does not automatically apply to all kinds of claims that could have been brought. For example, a state lawsuit does not bar a plaintiff's subsequent *qui tam* claim in federal court because it would be "unfair" to do so. *United States ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 354 (3d Cir. 2019). Likewise, it is well established that the doctrine does not bar future claims that could not have been fairly adjudicated in a prior civil action that affords only "a limited forum for the adjudication of . . . narrow issue[s]." *Heir v. Delaware River Port Auth.*, 218 F. Supp. 2d 627, 636 (D.N.J. 2002) (quoting *Rhodes v. Twp. of Saddle Brook*, 980 F. Supp. 777, 785 (D.N.J. 1997)).

18

An OPRA action presents a classic limited forum. An OPRA enforcement action is a narrow statutory proceeding. By statute, an OPRA action challenging a record custodian's decision to withhold public records "shall proceed in a summary or expedited manner." N.J.S.A. 47:1A-6. "This statutory language requires a trial court to proceed under the procedures prescribed in Rule 4:67" applicable to "summary actions." *Courier News v. Hunterdon Cnty. Prosecutor's Off.*, 817 A.2d 1017, 1020 (N.J. Super. Ct. App. Div. 2003). An OPRA summary action proceeds on a compressed timeline, and its substantive scope is confined by statute to the single, narrow question of whether the record custodian violated OPRA by failing to provide government records in compliance with OPRA's statutory timeframe and exemptions. Moreover, it affords the government the right to moot the action by belatedly providing records or asserting exemptions within seven days of the commencement of the action (which occurred here). N.J.S.A. 47:1A-6. OPRA summary actions do not provide for discovery. Nor does an OPRA proceeding contemplate, or make provision for, resolution of other kinds of claims, like NVRA, under distinct legal frameworks, legal elements and standards, exemptions, defenses, and remedies.

Application of the entire controversy doctrine requires, in sum, "[]equality of forum," that is, "the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original

19

action." *Cafferta v. Peyser*, 597 A.2d 1101, 1103–04 (N.J. Super. Ct. App. Div. 1991). An OPRA summary proceeding, by statute, provides no such opportunity for a federal NVRA claim. In an NVRA action, a plaintiff is not limited to the strictures of an OPRA summary action. An NVRA plaintiff commences the action by complaint after a 90-day notice and cure period; is not subject to a summary dismissal upon the government's perfunctory or belated service of statutory exemptions; has a right to discovery; and has a right to public records under a distinct statutory regime, public policies, exemptions, defenses, and remedies. The OPRA summary procedures do not afford a state court the procedural mechanisms to adjudicate and remedy a plaintiff's rights under 52 U.S.C. § 20507(i). They are fundamentally incompatible proceedings.

In sum, the RNC's OPRA action, like the Special Civil Part action in *Cafferata* was "never intended to have preclusionary consequences beyond [its] own scope." 597 A.2d at 1104. The RNC thus lacked the opportunity to litigate its NVRA claim in the OPRA summary proceeding. It would be unfair to force such a limited state procedure on a federal NVRA claim. Therefore, the entire controversy doctrine cannot bar this NVRA claim.

### B. The RNC Could Not Have Asserted Its NVRA Claim at the Time It Filed the OPRA Action

Even if New Jersey's entire controversy doctrine could be applied to extinguish the Plaintiff's federal rights under the NVRA, it could be done only if the

NVRA claim could have been brought concurrently with the state OPRA claim. It is well settled that the entire controversy doctrine should not penalize a litigant for failing to join a claim that was not yet ripe for judicial resolution. *See Highland Lakes Country Club & Cmty. Ass'n v. Nicastro*, 966 A.2d 1102, 1107 (N.J. Super. Ct. App. Div. 2009) ("[T]he [New Jersey] Supreme Court has noted that when a claim is 'not ripe for judicial review at the time that it theoretically should have been asserted,' application of the bar imposed by the entire controversy doctrine would deny the plaintiff 'a fair and reasonable opportunity to' litigate the claim." (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 521 (N.J. 1995) (Stein, J., dissenting))); *see also Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991) ("If . . . a claim could not have been presented in the first action, then it will not be precluded in a later action.").[3]

This limitation applies here—and is dispositive—because the RNC was prohibited by law from asserting its NVRA claim in the state-court OPRA action. The NVRA requires a plaintiff to provide written notice of violation to the chief election official at least ninety days before it is permitted to file suit. 52 U.S.C. §

---

[3] Indeed, all relevant law the RNC could locate concerning preclusion of federal claims indicates that a federal claim not previously raised in state court will **not** be precluded where a plaintiff has not "ha[d] a full and fair opportunity to litigate [its] claims or issues" in the state proceeding. *See, e.g.*, *Peduto v. City of N. Wildwood*, 878 F.2d 725, 728 (3d Cir. 1989) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480–81 (1982)).

21

20510(b)(1)–(2). The RNC served its notice of violation upon the Secretary of State on July 3, 2025. Therefore, the RNC was prohibited from commencing a lawsuit against the Defendant until **October 1, 2025**.

OPRA, by contrast, requires a record requester to commence a lawsuit to enforce its OPRA rights within forty-five days of receipt of a denial of records. The Defendant sent a letter to the RNC on July 29, 2025, in which Defendant objected to the majority of the RNC's requests on state law grounds. *See* Compl., Ex. H. The forty-five-day deadline for the RNC to commence a lawsuit in state court challenging that denial was **September 12, 2025**. The RNC filed its OPRA action on July 17, 2025. *See* Fleming Decl., Ex. 1. The state court dismissed the portion of the RNC's OPRA lawsuit concerning the requests at issue here on July 30, 2025, based on a technical safe harbor invoked by the Defendant here. *See* Fleming Decl., Exs. 2, 4. Plainly, the RNC could not have brought its federal NVRA lawsuit until long after the state court action could have been brought, was brought, and had been dismissed.

The RNC filed the OPRA action to enforce its state-law rights in a timely manner while the NVRA notice period was running. This is precisely the type of practical litigation sequencing that the entire controversy doctrine cannot preclude.

22

### C.    The State-Court Dismissal Was Not a Merits Adjudication of the NVRA Claim

The state court never considered, addressed, or ruled upon the NVRA's disclosure requirements. The July 30, 2025, dismissal was based solely on OPRA's safe-harbor provision, N.J.S.A. 47:1A-6, which provides for dismissal when a public agency produces responsive records and objections within seven business days of service of the complaint. *See* Fleming Decl., Ex. 4 at 8. This was a procedural dismissal mechanism unique to OPRA; it has no analog under the NVRA. The December 11, 2025, reconsideration order likewise addressed only whether the safe-harbor provision was properly applied to Defendants' assertion of objections rather than records within the seven-day safe-harbor window—not whether the NVRA (or OPRA, for that matter) required production of the disputed records. *Id.*

A procedural dismissal without prejudice under a statute-specific safe-harbor provision does not constitute the type of final, merits-based adjudication necessary to trigger preclusive effect over a different cause of action under a different legal framework. Applying the entire controversy doctrine here would effectively deny the RNC any judicial forum for its federal NVRA claim when it invokes its rights under a state open records law—a result that is fundamentally inconsistent with the NVRA's express private right of action and with federal supremacy principles.

23

**D.    In Any Event, the NVRA and OPRA Claims Vindicate Different Substantive Rights and Are Distinct**

New Jersey's entire controversy doctrine requires joinder of claims that "arise from related facts or the same transaction or series of transactions." *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995). The "central consideration" is "whether a sufficient commonality of facts undergirds each set of claims to constitute essentially a single controversy that should be the subject of only one litigation." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 266 (3d Cir. 2004) (quoting *DiTrolio*, 662 A.2d at 497).

The RNC's claim under OPRA and this NVRA action have one thing in common: They both have sought to obtain the records set forth in the March 2025 request. But, from there, the claims differ in several material respects and do not constitute "essentially a single controversy." The two claims arise under fundamentally different statutes and legal regimes with different elements, different defenses, and different remedial schemes. OPRA is a state public-records statute that contains multiple exemptions for overbroad requests, undue burden, and inter-agency or intra-agency advisory, consultative, or deliberative material. N.J.S.A. 47:1A-1.1, 47:1A-5(g). The NVRA, by contrast, is a federal voting rights statute that mandates disclosure of "all records" concerning the specific subject of voter list maintenance, subject to only two narrow exceptions that are not at issue here. 52 U.S.C. § 20507(i)(1).

These are not merely two legal theories for the same claim. Under OPRA, Defendant's overbreadth and burden objections may have been colorable defenses it asserted in the state court. Under the NVRA, however, they are not. The NVRA contains no exception for overbreadth or undue burden, and Defendant's reliance on such objections in response to the NVRA requests underscores the fundamental difference between the two statutory schemes.

And to the extent Defendant now attempts to thrust those state defenses from its state court proceeding, such defenses are preempted by the NVRA and the Supremacy Clause. The Supremacy Clause provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, § 2. The U.S. Supreme Court has consistently interpreted the Supremacy Clause to mean that "where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . federal law must prevail." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (cleaned up); *accord California v. ARC Am. Corp.*, 490 U.S. 93, 100, 101 (1989); *United States v. Locke*, 529 U.S. 89, 109–10 (2000). That is why, for example, the U.S. Supreme Court has recognized that the NVRA's explicit mandate that states "accept and use" the federal form for voter registration purposes precludes a state "from requiring a Federal Form applicant to submit

25

information beyond that required by the form itself." *See ITCA*, 570 U.S. 1, 9, 20. Put another way, a state cannot use state law as a means of circumventing clearly articulated Congressional objectives.

Here, Defendant is attempting to subject the RNC's NVRA rights to a state OPRA substantive and procedural regime through New Jersey's entire controversy doctrine. That cannot be done in a manner consistent with the federal rights at stake and the doctrine of federal preemption.

### E.   Equitable Considerations Weigh Against Preclusion

As discussed *supra* at Part II.A, the entire controversy doctrine is equitable in nature, and courts retain discretion to decline to apply it where doing so would produce an unjust result. *See Higgins v. Thurber*, 992 A.2d 50, 61 (N.J. Super. Ct. App. Div. 2010) (concluding that "it would be unfair and unjust" to bar a legal malpractice claim); *see also 700 Hwy. 33 LLC v. Pollio*, 23 A.3d 446, 451 (N.J. Super. Ct. App. Div. 2011) ("The entire controversy doctrine is an equitable principle and *its application is left to judicial discretion*." (emphasis added)). Here, Defendant invoked OPRA's safe-harbor provision to obtain dismissal of the state-court action, representing to the state court that he had "issued a full and final response" to the RNC's requests. Fleming Decl., Ex. 4 at 3–4. Defendant now seeks to wield that very dismissal as a sword to preclude the RNC from obtaining a determination of its federal rights. Defendant should not be permitted to benefit from his own strategic

maneuvering by claiming that its state-court safe-harbor dismissal bars the RNC's independent federal claim—a claim that the state court never had occasion to consider.

### III.    The Complaint States a Claim for Relief Under the NVRA

Defendant's final argument is that the Complaint fails to state a claim because (a) some of the requested records purportedly "do not exist" and would require Defendant to create new records, and (b) the NVRA does not require production in electronic format on a rolling basis. Mot. 20. Neither contention warrants dismissal.

### A.    The Requested Records "Exist" Within Defendant's Electronic Databases and Are Subject to Disclosure

Defendant contends that the records sought in Requests Nos. 3–5 and 8–10 "do not exist" because New Jersey's Statewide Voter Registration System ("SVRS") "cannot generate a report containing the information requested." Mot. 22. Yet, in the next breath, Defendant acknowledges that "some of the underlying data may reside within existing registration records." *Id.* This argument depends on a semantic distinction between "records" and "reports." The RNC does not ask Defendant to create records from scratch. It asks Defendant to make available the data the State concededly maintains within its electronic databases regarding voter list maintenance activities.

Defendant's own response to the RNC's requests makes clear that the relevant data exists. For example, in response to Requests Nos. 8–10, Defendant

27

acknowledged that such records may be in the possession of various state agencies, including the Department of Health, Motor Vehicle Commission, and Department of Corrections, but refused to produce such records "given the overbreadth" of the requests. *See* Compl., Ex. H at 5–6. An acknowledgment that records exist, combined with a refusal to produce them on state-law grounds, contradicts the representation that they "do not exist."

The NVRA's public-inspection provision encompasses electronic data stored within state voter registration systems. The First Circuit has recognized that NVRA records include "electronic report[s]" generated from "the database through which [a state] carries out its voter list registration and maintenance activities." *Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 47 (1st Cir. 2024). And as the District of New Mexico has explained, the provision's reference to "programs and activities" is broad and "must reference programs and activities more broadly[,]" the only limitation being "that those programs or activities are 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Voter Reference Found., LLC v. Torrez,* 727 F. Supp. 3d 1014, 1212 (D.N.M. 2024) (quoting 52 U.S.C. § 20507(i)(1)).

Defendant's reliance on *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), is misplaced. *Kissinger* involved records that had been physically removed from the agency's possession and transferred to a different

28

entity. The Supreme Court held that FOIA did not require the agency to retrieve records it no longer possessed, explaining that "[i]f the agency is not required to create or to retain records under the FOIA, it is somewhat difficult to determine why the agency is nevertheless required to retrieve documents which have escaped its possession, but which it has not endeavored to recover." *Id.* at 152. Here, Defendant does not claim that the data has been removed from its possession. On the contrary, Defendant concedes that the underlying data resides within the SVRS and related state databases controlled by Defendant. *See* Compl., Ex. H. at 5–6 (acknowledging that requested data "may be maintained in each individual's registration record"). The fact that the data has not been pre-compiled into a specific report format does not mean the records "do not exist." Running a database query to extract existing data is categorically different from creating a new record; it is simply the electronic equivalent of pulling files from a cabinet and assembling them for production.

Finally, because the Complaint alleges that the records do exist, *see, e.g.*, Compl. ¶¶ 21(a), (b), (d), and there is evidence that the data exists in the SVRS, Compl., Ex. H. at 5–6, Defendant's assertion that they "do not exist" is a factual issue for discovery, not a ground to argue a failure to state a claim.

### B. The NVRA Does Not Permit a State to Refuse Disclosure on Grounds of Overbreadth or Undue Burden

As to Requests Nos. 14–16, Defendant objected that the requests were "unduly burdensome" and "practically infeasible." Compl. ¶¶ 21(d)–(e); *id.*, Ex. H.

29

But the NVRA contains no exception for burden or infeasibility. The statute mandates disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). It exempts only two narrow categories. *Id.* Congress chose not to incorporate any analogue to OPRA's burden-based exceptions, and this Court should not read one into the federal statute.

Defendant's objections are, at bottom, OPRA-based defenses that are inapplicable to this federal NVRA claim. The distinction matters. The NVRA was enacted against the backdrop of state public-records laws, and Congress deliberately chose a broader disclosure mandate. Defendant cannot invoke state-law limitations to defeat a federal right. *See ITCA*, 570 U.S. at 9; *Charles H. Wesley Educ. Found. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005) (the NVRA "overrides state law inconsistent with its mandates").

## C.    The Manner-of-Production Issue Does Not Warrant Dismissal

Defendant devotes significant attention to the argument that the NVRA's "public inspection" language does not require electronic production, relying principally on *Greater Birmingham Ministries v. Secretary of State for Alabama*, 105 F.4th 1324 (11th Cir. 2024). But this argument does not support dismissal for three reasons.

30

**First**, the Complaint's core allegation is that Defendant has refused to make the requested records available in any format—physical or electronic. And further, the Complaint alleges that Defendant has denied access to the records in any manner—copies or personal inspection. The Complaint does not merely allege that Defendant declined to provide records electronically. It alleges that Defendant has failed and refused to provide the records at all. *See* Compl. ¶¶ 21, 28–29. Whether the ultimate remedy requires in-person inspection, photocopying, or electronic production is a remedial question to be resolved after the Court determines that Defendant has violated its statutory obligations.

But to the extent the argument warrants a response at this stage of the proceedings, it is flatly wrong. As the RNC noted in its pre-motion conference letter, court decisions routinely require chief election officers to produce **electronic records and data** to requesters under the NVRA. *See, e.g., Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025); *Bellows*, 92 F.4th 36 (1st Cir. 2024); *Pub. Int. Legal Found. v. North Carolina*, 996 F.3d 257 (4th Cir. 2021); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012); *Pub. Int. Legal Found. v. Knapp*, 749 F. Supp. 3d 563 (D.S.C. 2024); *Voter Reference Found.*, 727 F. Supp. 3d 1014 (D.N.M. 2024); *Pub. Int. Legal Found. v. Dahlstrom*, 673 F. Supp. 3d 1004 (D. Alaska 2023); *Pub. Int. Legal Found. v. Griswold*, No. 21-cv-03384-PAB-MEH, 2023 WL 6376706 (D. Colo. Sept. 29, 2023); *Pub. Int. Legal Found. v. Chapman*,

595 F. Supp. 3d 296 (M.D. Pa. 2022), *vacated and remanded on other grounds*, *PILF*, 136 F. 4th 456 (3d Cir. 2025); *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (2016).

While Defendant seeks to rely upon the lone outlier court decision limiting access to in-person inspection in Alabama, that decision is an anomaly, not an ordinary case. And New Jersey should not follow Alabama's example here. In that case, African-American pastors sought access to data listing voters removed from the registration lists due to felony convictions in an effort to re-enfranchise them. *See Greater Birmingham Ministries*, 105 F.4th at 1327–29. Alabama withheld the electronic records, citing NVRA language regarding "inspect" and "photocopy." *Id.* at 1332–34. That draconian ruling is not one New Jersey should endorse. And in any event, it is not a basis for dismissal of the underlying claim at the pleading stage.

**Second**, even under *Greater Birmingham Ministries*, a state must, at a minimum, "make available for public inspection" its voter list maintenance records. 52 U.S.C. § 20507(i)(1). Defendant has not offered to make the records available for inspection in any format or manner. The July 29, 2025, response did not offer an in-person inspection as an alternative to electronic production; it simply refused to provide the records on the basis of state-law objections. *See generally* Compl., Ex. H. A defendant cannot avoid liability under the NVRA by arguing that the plaintiff

32

requested electronic records while simultaneously refusing to provide access to physical records. The statute requires, at a minimum, that the records be made available for public inspection, and Defendant has not done so. Because Defendant chose, for a year, to flatly deny access to records, he has waived any defense based on the manner of making them available at this point.

**Third**, the request for production on a "rolling basis" is a proposed arrangement, not an element of the claim at issue. The RNC's claim is that Defendant has violated the NVRA by failing to make voter list maintenance records available for public inspection. Whether the Court's ultimate remedial order directs production on a rolling basis or in some other manner is a question for the remedial phase. It does not affect the viability of the claim itself.

### D. Each Disputed Request Seeks Records Within the Scope of § 20507(i)(1)

The Complaint identifies specific deficiencies in Defendant's responses to Requests Nos. 1, 3–5, 8–10, and 14–16. Compl. ¶ 21. Each demand seeks records squarely within the scope of the NVRA's public-inspection provision:

Request No. 1 sought records "setting forth, documenting, describing, or discussing the programs and activities conducted in [New Jersey] for the purpose of ensuring the accuracy and currency of official lists of eligible voters." This is a near-verbatim recitation of the statutory language of 52 U.S.C. § 20507(i)(1). Defendant

33

cannot seriously contend that records describing the state's own list maintenance programs are outside the statute's scope.

Requests Nos. 3–5 sought records identifying persons sent address confirmations, those who responded, and those who did not respond. Address confirmation mailings are a core component of the NVRA's list maintenance framework. *See* 52 U.S.C. § 20507(d). Records documenting these mailings are, by definition, records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."

Requests Nos. 8–10 sought records exchanged between Defendant's office and various state and federal agencies regarding deceased, relocated, and criminally convicted voters. These records directly concern the implementation of voter list maintenance activities, as they provide insight into the processes by which New Jersey identifies and removes ineligible registrants from its rolls.

Requests Nos. 14–15 sought inter-agency communications concerning voter list maintenance procedures and implementation. And Request No. 16 sought complaints and communications received regarding voter roll inaccuracies. Each of these categories plainly concerns the "implementation of programs and activities" for maintaining accurate voter lists.

34

As to each of these categories of requested records, the Complaint alleges that Defendant either refused to produce responsive records or failed to conduct any search for responsive records. Compl. ¶ 21. The Complaint further alleges that Defendant's refusals were based on state-law objections—overbreadth, undue burden, and infeasibility—that the NVRA does not recognize. *Id.* These allegations, taken as true, state a plausible claim that Defendant has violated the NVRA by refusing to make available records that fall within the statute's mandatory disclosure requirement.

### E.    Defendant's Characterization of the RNC's Requests as a "Sweeping Audit" Is Irrelevant

Throughout its brief, Defendant attempts to frame the RNC's requests as an improper effort to conduct a "sweeping, line-by-line audit of voter-registration records[.]" Mot. 20. This characterization is misleading. The RNC is not seeking access to individual voter registration records to challenge the eligibility of specific voters. It is seeking records concerning the implementation of the state's list maintenance programs—the very records that § 20507(i)(1) requires to be made available for public inspection.

Defendant's framing reflects a fundamental mischaracterization of the NVRA's disclosure provision. Section 20507(i)(1) is not limited to policies and procedures manuals. It encompasses "all records concerning the implementation of programs and activities" for maintaining accurate voter lists. 52 U.S.C. §

35

20507(i)(1). The word "all" is comprehensive and unambiguous. As the First Circuit has recognized, the statute's scope is deliberately broad: "[T]he evaluation of voter registration rolls would be impossible if the results of [the State's] voter list registration and maintenance activities were not subject to public disclosure." *Bellows*, 92 F.4th at 49. Records documenting the actual results of list maintenance activities, including who was sent an address confirmation, who was identified as potentially ineligible, and what information was exchanged with other agencies, are records "concerning the implementation" of those activities. Defendant's attempt to narrow the statute's scope to exclude such records has no basis in the statutory text and is refuted by numerous court decisions.

Defendant also notes that the Complaint "contains no allegations of deficiencies for demand Nos. 2, 6, 7, 11, 12, and 13." Mot. 20 n.9. This is correct— because the RNC is not asserting claims based on those demands. The RNC has narrowed its claims to Requests Nos. 1, 3–5, 8–10, and 14–16, each of which is specifically addressed in the Complaint, and to each of which Defendant has failed to respond in a manner compliant with federal law. Compl. ¶ 21. Defendant's observation about the requests not at issue is therefore irrelevant.

## CONCLUSION

The NVRA imposes a clear, mandatory obligation on state election officials to make voter list maintenance records available for public inspection. For a year,

and at great public and private expense, Defendant has refused to comply with this obligation for the vast majority of the records the RNC has requested, relying on state-law objections that are inapplicable under the federal statute. The RNC has standing to enforce its statutory right to these records. Its claims are not precluded by the state-court OPRA action, which involved a different statutory framework and was resolved on procedural grounds without any adjudication of the NVRA's requirements. And the Complaint states a plausible claim for relief under the plain text of 52 U.S.C. § 20507(i)(1).

The motion to dismiss should be denied in its entirety. In the alternative, should the Court identify any deficiency in the pleadings, the RNC respectfully requests leave to amend its Complaint.

Dated: March 23, 2026

Respectfully submitted,

**CONTARINO ROTH LLC**

By: _s/ Josiah Contarino_
    Josiah Contarino
    (NJ Bar No. 003962013)
    **CONTARINO ROTH LLC**
    50 Park Place, Suite 1105
    Newark, NJ 07102
    (973) 200-1926
    jcontarino@contarinoroth.com

    _Attorneys for Plaintiff_
    _Republican National Committee_

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.2(14)(b)(1), this filing and its attendant papers, if any, are being served through an electronic filing system and will be received by all counsel of record.

*s/ Josiah Contarino*
Josiah Contarino
