## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

REPUBLICAN NATIONAL
COMMITTEE,

        Plaintiff,

        v.

DALE G. CALDWELL, in his official
capacity as Secretary of State of
New Jersey,*

        Defendant.

No. 25-cv-17612 (GC) (JTQ)

*Electronically Filed*

Motion Return Date:
April 20, 2026

---

## REPLY BRIEF IN FURTHER SUPPORT OF
## DEFENDANT DALE G. CALDWELL'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Stephen Ehrlich
*Deputy Solicitor General*

Liza B. Fleming
*Deputy Attorney General*

JENNIFER DAVENPORT
ATTORNEY GENERAL
OF NEW JERSEY
R.J. Hughes Justice Complex,
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625
Phone: (862) 350-5800
Email: Liza.Fleming@njoag.gov
*Attorneys for Defendant*

*(Additional counsel listed on signature page)*

---

* The current Secretary of State of New Jersey, Dale G. Caldwell, has been automatically substituted for the former Secretary of State, Tahesha Way, under Fed. R. Civ. P. 25(d).

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ..................................................................................1

ARGUMENT .........................................................................................2

    I.     The complaint fails to plead the RNC's standing. ........................2

    II.    The RNC's earlier-filed state-court action precludes
          this lawsuit. ..............................................................................8

    III.   The RNC seeks records that indisputably do not exist
          and in a format not required by the NVRA. ...............................11

CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Archbrook Laguna, LLC v. Marsh,*
   997 A.2d 1035 (N.J. App. Div. 2010) .............................................. 11

*Bost v. Illinois State Board of Elections,*
   146 S. Ct. 513 (2026) ....................................................................... 7

*Cafferata v. Peyser,*
   597 A.2d 1101 (N.J. App. Div. 1991) .............................................. 9

*EJ MGT LLC v. Zillow Grp., Inc.,*
   No. 21-1470, 2021 WL 5754901 (3d Cir. Dec. 3, 2021) ................... 4

*FEC v. Akins,*
   524 U.S. 11 (1998) ...................................................................... 2, 3

*Fenwick v. Sotheby's,*
   No. 21-11987, 2022 WL 1002098 (D.N.J. Apr. 4, 2022)................... 5

*Greater Birmingham Ministries v. Sec'y of State for Ala.,*
   105 F.4th 1324 (11th Cir. 2024) .............................................. 13, 14

*Pa. ex rel. Zimmerman v. PepsiCo, Inc.,*
   836 F.2d 173 (3d Cir. 1988) ............................................................ 5

*Paff v. Galloway Twp.,*
   162 A.3d 1046 (N.J. 2017) ............................................................ 10

*PILF v. Benson,*
   136 F.4th 613 (6th Cir. 2025) ......................................................... 3

*Project Vote, Inc. v. Kemp,*
   208 F. Supp. 3d 1320 (N.D. Ga. 2016) ......................................... 14

*Pub. Interest Legal Found. v. Sec'y of Commw. of Pa.*,
  136 F.4th 456 (3d Cir. 2025)..................................................passim

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011) .......................................................... 4

*Rhodes v. Twp. of Saddle Brook*,
  980 F. Supp. 777 (D.N.J. 1997)................................................... 10

*RNC v. Aguilar*,
  No. 24-518, 2024 WL 4529358 (D. Nev. Oct. 18, 2024) ................... 7

*RNC v. Benson*,
  754 F. Supp. 3d 773 (W.D. Mich. 2024) ......................................... 6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................ 2, 3

*United States v. Oregon*,
  No. 25-1666, 2026 WL 318402 (D. Or. Feb. 5, 2025),
  *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026) .................... 6

*United States v. Weber*,
  No. 25-9149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026),
  *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026) .................... 6

## Statutes

52 U.S.C. § 20507.................................................................. 10, 13

## Rules

N.J. Ct. R. 4:30A...................................................................... 9

## INTRODUCTION

Defendant's opening brief ("Op. Br.") explained that the RNC seems to believe "the NVRA allows it to obtain any election-related materials it wants, in any form it wants, at any time it wants." Op. Br. 2, ECF No. 17-1. Far from disavowing this position, the RNC's opposition brief ("Opp.") doubles down on it. According to the RNC, because the NVRA does not expressly provide for "overbreadth, undue burden, [and] lack of specificity" objections, there is no limit on what the RNC may demand under the NVRA. Opp. 1, 5. Under the RNC's logic, the NVRA's public-inspection provision allows it to simply ask generally for *every* election-related record. It can force election officials to spend hundreds of hours reviewing millions of records to compile electronic lists of the RNC's choosing. And because registration data are ever-changing, the RNC can demand new searches and productions whenever it wants. Worse, the RNC can compel elections officials to litigate the same set of demands in multiple suits.

That is not the law. There are multiple limitations that bar the RNC's demands here. Standing permits the RNC to sue only for the denial of information that actually inflicts a concrete injury—and the RNC has identified none. The entire controversy doctrine also means that the RNC cannot sue for records in state court and then demand the same records in a federal forum. And the plain text of the NVRA does not require election officials to create records that do not already exist nor does

1

it support the RNC's demand for electronic copies of records. The RNC's contrary arguments lack merit, so its complaint should be dismissed.

## ARGUMENT

### I.    The complaint fails to plead the RNC's standing.

"No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021). A plaintiff bringing suit under the NVRA's public-inspection provision must allege well-pled facts "establish[ing] *a nexus* among the omitted information to which [it] has entitlement, the purported harm *actually caused* by the specific violation, and *the 'concrete interest'* that Congress identified as 'deserving of protection' when it created the disclosure requirement." *Pub. Interest Legal Found. (PILF) v. Sec'y of Commw. of Pa.*, 136 F.4th 456, 464 (3d Cir. 2025) (citation omitted), *cert. denied*, No. 25-379 (U.S. Mar. 2, 2026). As Defendant explained, the RNC's complaint falls well short of those requirements. It does not plead any actual, concrete injury, let alone explain *how* any injury was caused by the lack of the specific records at issue. And it does not allege a nexus between any such injury and an interest protected by the NVRA. In response, the RNC does nothing to overcome these fatal deficiencies.

The RNC's first argument flouts binding precedent. Citing *FEC v. Akins*, 524 U.S. 11 (1998), the RNC insists that, because the NVRA gives the public a statutory right to inspect certain records, the mere denial of those records "constitutes a concrete injury sufficient for Article III purposes." Opp. 9. But the Third Circuit, like other courts of appeals, has

rejected this exact argument. The plaintiff in *PILF*, like the RNC here, argued that it had adequately pled standing under *Akins*. *PILF*, 136 F.4th at 461–62. But the court held that *Akins* was inapposite for two reasons. First, *Akins* was decided before *TransUnion* and other Supreme Court cases establishing the need for plaintiffs to demonstrate a concrete injury *in fact*, not merely an injury in law. *Id.* at 462–67. Second, the purpose of the NVRA—"namely the expansion of voter participation in federal elections"—was different from the statute at issue in *Akins*. *Id.* at 469; *accord, e.g., PILF v. Benson*, 136 F.4th 613, 629–31 (6th Cir. 2025), *cert denied*, No. 25-437 (U.S. Mar. 2, 2026); *Campaign Legal Center v. Scott*, 49 F.4th 931, 937–39 (5th Cir. 2022) (distinguishing *Akins*). So, contrary to the RNC's argument, it is not enough "for a plaintiff asserting an informational injury from a violation of a statute" with "a public disclosure" provision "to allege only that he has been denied information." *PILF*, 136 F.4th at 465.

Perhaps recognizing that its position contravenes binding authority, the RNC next insists that it has nonetheless pled an actual, concrete injury caused by its failure to receive the records at issue, as well as the requisite "nexus" between this injury and "the interest Congress sought to protect." *Id.* But it plainly has not. The only relevant well-pled facts in the complaint are that the RNC purchases "voter registration rolls" for various purposes, including voter-registration drives and voter-outreach efforts. Compl. ¶ 4. Beyond that, the complaint offers only a single

3

paragraph with a conclusory assertion that the demanded documents—which do *not* include New Jersey's voter registration list—are somehow "essential" to those purposes, with no explanation of how or why. *Id.* ¶ 26. That is not enough. *See EJ MGT LLC v. Zillow Grp., Inc.*, No. 21-1470, 2021 WL 5754901, at *3 (3d Cir. Dec. 3, 2021) (complaint failed to plead standing because it did "not explain," "in any non-conclusory manner," how the asserted statutory violation caused the injury alleged). Bypassing its own complaint, the RNC now plucks statements from its correspondence with Defendant. Opp. 11 (citing Compl., Ex. A at 1). But this correspondence merely paraphrases the same insufficient allegations that appear in the complaint. *See id.*

The critical missing piece is any well-pled allegation that the RNC's failure to obtain the demanded New Jersey records has, in the months since the March 2025 demands were made, "*actually caused*" the RNC to suffer a concrete injury in fact. *PILF*, 136 F.4th at 464. The RNC emphasizes that it has alleged "concrete, ongoing programs" and "concrete activities." Opp. 11. But that misunderstands the applicable standard. Article III requires "concrete and particularized harm." *PILF*, 136 F.4th at 465 (citation omitted). And the Complaint is devoid of any allegation—let alone well-pled facts showing—that the RNC has sustained any actual injury to such programs or activities by not receiving specific records demanded in March 2025. Nor does the complaint allege that any such injury is "certainly impending." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42

4

(3d Cir. 2011). There is no allegation, for example, that the RNC has been unable to engage in voter-registration efforts or any of the other "concrete activities" that it ostensibly conducts on a nationwide basis.

Without identifying anything in the complaint (or its attached exhibits) on point, the RNC instead falls back on new factual allegations it introduces in its opposition brief. "Without voter list maintenance records" generally, the RNC says, its "ability to plan and allocate resources for voter identification, voter advocacy, and voter registration drives" is "impair[ed]," because the RNC supposedly "cannot identify areas where list maintenance deficiencies may result in inaccurate voter data that undermines its outreach efforts." Opp. 13. The RNC also claims that the lack of such records "impairs the RNC's election monitoring activities, which rely on understanding how the state maintains its voter rolls to detect potential irregularities." *Id.*

For at least two reasons, these belated contentions are insufficient to confer standing. First, "[t]hese allegations are not included in the Complaint and 'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Fenwick v. Sotheby's*, No. 21-11987, 2022 WL 1002098, at *6 (D.N.J. Apr. 4, 2022) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Second, even if the Court could consider these new allegations, they would not suffice because they are vague, conclusory, and speculative. They still do not explain *how* the lack of the *specific records* the RNC has demanded

5

but not received—as opposed to extensive information it *did* receive, including comprehensive lists of inactive and deleted registrants—has actually inflicted some concrete injury by undermining its outreach efforts. *See* Opp. 5. Without any such explanation, the Court has no basis to conclude that the RNC has actually been harmed by Defendant's specific conduct here, nor any basis to conclude that the specific records at issue are *actually* needed for the purposes alleged.[1]

It is no wonder, then, that courts have repeatedly rejected the same types of allegations the RNC makes here. *See, e.g.*, *RNC v. Benson*, 754 F. Supp. 3d 773, 789–90 (W.D. Mich. 2024) (allegations that RNC "relies on [accurate] voter registration lists to determine its plans and budgets and estimate voter turnout," and that it "monitors … election officials' compliance with their NVRA … obligations through publicly available records," were insufficient for standing to assert NVRA claim), *aff'd*, No. 24-1985, 2025 WL 2731704 (6th Cir. Sept. 25, 2025); *RNC v. Aguilar*, No. 24-518, 2024 WL 4529358, at *8 (D. Nev. Oct. 18, 2024) (holding insufficient allegations that inaccurate voter roll information "impairs the

---

[1] *Cf. United States v. Weber*, No. 25-9149, 2026 WL 118807, at *13 (C.D. Cal. Jan. 15, 2026) (rejecting federal government's NVRA demand for State's unredacted voter roll because, *inter alia*, plaintiff failed to explain "why [the] unredacted voter information is necessary [for the purported purpose of] evaluat[ing] state policies"), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 25-1666, 2026 WL 318402, at *10–11 & n.4 (D. Or. Feb. 5, 2025) (expressing concern that federal government's stated purpose for requesting voter records was pretextual), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026).

RNC's … voter turnout, voter registration, mail-voting campaigns, and in-person efforts" and "impedes the RNC's ability to help Republican candidates … win their elections"; such allegations "do not provide any evidence or examples of *how* voter lists have actually impaired RNC's ability to get voters to register and vote or elect candidates" and do not offer "any concrete specifics").

As this case law shows, it is not enough for the RNC to say that it is a "major political party with concrete, ongoing voter engagement programs."[2] Opp. 14. That status does not automatically confer standing to bring an NVRA lawsuit for any records the RNC may demand. Like any other NVRA plaintiff, the RNC must allege well-pled facts establishing a concrete injury actually caused by denial of the specific information it demanded, as well as a nexus between that injury "and the interest Congress sought to protect." *PILF*, 136 F.4th at 465. Merely asserting that the RNC has "programs" that "rely" on accurate voter lists fails to plead the requisite injury, let alone causally connect it to the denial of any of the specific categories of records demanded here.

Nor does the RNC plead the requisite nexus with the congressionally protected interest embodied in the NVRA, namely, "the expansion of

---

[2] The RNC's reliance on *Bost v. Illinois State Board of Elections*, 146 S. Ct. 513 (2026), is misplaced. Opp. 12–13. *Bost* held that candidates for office have standing to challenge rules governing the counting of votes in their elections. 146 S. Ct. at 523. The RNC is not a candidate, and it is not challenging vote-counting rules.

voter participation in federal elections." *PILF*, 136 F.4th at 469. The RNC appears to concede that "gain[ing] partisan advantage" is not a protected interest. Opp. 16. One activity it allegedly conducts, voter registration, *does* serve the NVRA's protected interest. But, once again, the RNC does not explain how the lack of any of the specific records it demanded (but has not received) has harmed its ability to register voters. The RNC presumably uses New Jersey's voter registration list to learn who is *already* registered. But the records demanded here did not include the registration list. The complaint draws no nexus between specific records that the RNC has *not* received and its ability to register voters.

Because the RNC has failed to plead the irreducible constitutional minimum of standing, its complaint should be dismissed.

## II. The RNC's earlier-filed state-court action precludes this lawsuit.

The complaint should also be dismissed because the RNC previously demanded the same documents in state-court litigation. That choice is preclusive of this lawsuit under New Jersey's entire-controversy doctrine. That doctrine was designed to thwart exactly what the RNC attempts to do here: take a second bite at the same apple under a claim that it failed to join in the first action.

As explained in a case cited by the RNC, "[t]he joinder requirements of the entire controversy doctrine are designed to achieve economy in litigation by avoiding the waste, inefficiency, delay and expense of

8

piecemeal and fragmented litigation." *Cafferata v. Peyser*, 597 A.2d 1101, 1103 (N.J. App. Div. 1991). So the doctrine has an intentionally broad sweep. "Non-joinder of claims required to be joined" shall "result in the preclusion of the omitted claims." N.J. Ct. R. 4:30A.

The RNC concedes that the touchstone of the claim-joinder analysis is whether the claims arise from related facts; if so, they are part of the same "controversy" even if they assert different legal theories. Opp. 24. The RNC nonetheless insists that its OPRA and NVRA claims do not form the same controversy. *Id.* Yet it cites no authority for this proposition because it is obviously untrue. The two claims involve not merely related facts but identical facts: they arise from identical demands for identical records. *See* Compl., Ex. A, at 1. Indeed, the RNC's own cover letter described its demands as a "Public Records Request Under the [NVRA] & State Public Records Law." *Id.*, Ex. B.

The RNC strains mightily to contrast OPRA with the NVRA's public-inspection provision. Opp. 24–26. The effort is not only unconvincing (both statutes are public-records laws) but also irrelevant. Under the entire-controversy doctrine, it does not matter whether two legal theories have different elements or different defenses; what matters is whether both are implicated by the same facts. *See* Op. Br. 17–18. If so, as here, they must both be asserted in the same case, on pain of preclusion.

Nor can the RNC escape the entire-controversy doctrine by claiming that the state-court action did not provide an "equality of forum."

9

Opp. 18–20. The RNC's cited cases are wholly inapposite. An NVRA public-inspection claim is not a *qui tam* lawsuit, and joining NVRA and OPRA claims seeking the same records is nothing like bringing a 42 U.S.C. § 1983 claim for damages in a social-services action to terminate parental rights. *Compare* Opp. 18, *with Rhodes v. Twp. of Saddle Brook*, 980 F. Supp. 777, 785 (D.N.J. 1997). The New Jersey Superior Court regularly adjudicates federal claims alongside state ones, regardless of the elements and defenses in each. And the RNC's invocation of "discovery" is a red herring. The RNC fails to cite any 52 U.S.C. § 20507(i) case involving discovery, or to identify fact issues that would arise under the NVRA but not OPRA.

*Not* applying the entire-controversy doctrine in these circumstances would be anathema to its animating purpose: a requester could require election officials to litigate every record request in two different actions, first in state court under OPRA (which, unlike the NVRA, authorizes requests for electronic copies of records in some circumstances, *see, e.g.*, *Paff v. Galloway Twp.*, 162 A.3d 1046, 1055 (N.J. 2017)), and then, if it does not obtain everything it wants, file a second action in federal court seeking the same records. The doctrine exists to prevent that outcome.

Nor is that outcome required by timing considerations. *Contra* Opp. 20–22. Whether the RNC could have asserted its NVRA claim at the time it filed its OPRA claim is irrelevant. Where a claim that arises from a pending controversy can be joined in the controversy, it should be joined;

10

if it is instead brought in a second, successive suit, it will be precluded. *See Archbrook Laguna, LLC v. Marsh*, 997 A.2d 1035, 1040–41 (N.J. App. Div. 2010) (claims brought in second action precluded by the entire-controversy doctrine where they had accrued before first action ended, but were not joined in that action). Here, when the state court dismissed the RNC's OPRA claims in part on July 30, 2025, it expressly stated that the RNC could re-plead them if it believed Defendant's production was deficient. Instead of doing so, the RNC filed a motion for reconsideration, which was not decided until December 2025. It then continued to litigate the state-court action until February 2026. Nothing prevented the RNC from joining its NVRA claim in that lawsuit. It simply chose not to do so. Under the entire-controversy doctrine, that choice had preclusive effect.

In a last-ditch effort to avoid that outcome, the RNC observes that "[t]he state court never considered, addressed, or ruled upon the NVRA's disclosure requirements." Opp. 23. Of course it did not: the RNC failed to join its NVRA claim in the state-court litigation at all. That failure does not avoid the entire-controversy doctrine; it triggers it.

## III. The RNC seeks records that indisputably do not exist and in a format not required by the NVRA.

The RNC's claim fails for two additional reasons: (1) the records it seeks do not exist, and (2) the NVRA does not require the production of any records in the electronic format demanded by the RNC.

11

Regarding the first deficiency, the RNC seeks (1) "each record listing or identifying persons who were sent, responded to, or failed to respond to an address confirmation notice," and (2) "each record utilizing, documenting, or discussing information about [a] deceased voters, [b] voters who have relocated, and [c] voters convicted of a crime, for the purpose of updating voter registrations, exchanged between Defendant's office and various state and federal departments and systems." Compl. ¶ 21. As Defendant already explained, these records do not exist, *i.e.*, there is no "record listing or identifying [such] persons" or any "record utilizing, documenting, or discussing [such] information." Op. Br. 21–23.

The RNC asks this Court to ignore that fact. According to the RNC, it does not matter whether the records exist because there may or may not be responsive information in the millions of individual voter registration files in the Statewide Voter Registration System ("SVRS"). Opp. 27–28. The RNC claims that Defendant need simply run "a database query to extract the existing data"—a process the RNC analogizes to "pulling files from a cabinet and assembling them for production." Opp. 29. This ignores that, as Defendant has repeatedly emphasized, there is no "database query" that can be run across the SVRS to extract this data. *See* Compl., Ex. H at 3–11; Op. Br. 22. To use the RNC's file cabinet analogy, this is not a matter of simply "pulling files"; it would require someone— or more likely, hundreds of individuals—to review each of the millions of folders across many thousands of cabinets and manually log those files

12

that contain any requested information to create the records the RNC demands. The NVRA does not require election officials to undertake such a burdensome task to create a record that does not currently exist.[3]

The second deficiency pervades all of the RNC's requests: the RNC demands records in only "electronic format." Compl. ¶ 11. But the clear and unambiguous text of the public-inspection provision requires only that States make such records "available for public inspection and, where available, photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1). And as the Eleventh Circuit recently explained, the NVRA does not require electronic production, which "is neither public inspection nor photocopying; it is an entirely different method of disclosure." *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1332 (11th Cir. 2024). The RNC thus requested records in a form not required by the NVRA.

The RNC does not substantively respond to this point and it does not even attempt to justify its demands by reference to the statutory text. Instead, the RNC attacks *Birmingham Ministries*, declaring that decision "draconian," and asserting that "New Jersey should not follow Alabama's example." Opp. 32. That is not a legal argument. The closest the RNC comes to one is a lengthy string cite, Opp. 31–32, but the vast majority of the cited cases did not confront the issue presented in

---

[3] For this same reason, there is no "factual issue" here. *See* Opp. 29. Defendant has consistently stated that the SVRS cannot be queried to extract this information. The RNC has no allegations to the contrary.

13

*Birmingham Ministries*, let alone contradict its textual interpretation. The only cited case that is even remotely relevant is a district court decision from the Eleventh Circuit that predates *Birmingham Ministries*. *See Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016). *Kemp* held only that "records" subject to inspection under the NVRA includes those "in electronic form." *Id.* at 1335–36. To the extent *Kemp* can be read to require electronic records to be *produced*, it is no longer good law after *Birmingham Ministries*.

The RNC alternatively attempts to sidestep the text of the public-inspection provision, arguing that it does not matter whether the requested records must be produced electronically, because Defendant has not offered to make the records available in any other format. Opp. 31–32. But the RNC never asked Defendant to make records available in any other format. The RNC now effectively asks this Court to rewrite its requests and order Defendant to make all responsive records available for public inspection. But this simply underscores that it was improper for the RNC to request electronic records under the NVRA. And regardless, the RNC's new request is not appropriate or practical because it provides no opportunity for Defendant to develop an inspection process in a way that complies with New Jersey and federal privacy laws. To the extent any of the RNC's requested information exists, it is primarily maintained on the SVRS. Yet the entirety of the State's voter list is not subject to disclosure under the NVRA, *see* Op. Br. 21 n.11, and any sensitive and

14

confidential information (*e.g.*, driver license and social security numbers) must be redacted, Op. Br. 20–21 n.10.

If the RNC has now changed its mind and seeks to inspect information itself, it must make that request in a manner consistent with the NVRA, provide Defendant an opportunity to respond, confer in good faith, and raise any claimed violations that cannot be resolved at that time, consistent with the notice and cure provisions in the NVRA.

## CONCLUSION

The Court should grant Defendant's motion to dismiss.

Dated: April 13, 2026                    Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

*/s/ Liza B. Fleming*
Liza B. Fleming
Deputy Attorney General

Stephen Ehrlich
Deputy Solicitor General
R.J. Hughes Justice Complex,
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625

Robert A. Wiygul
Jason A. Levine
Hangley Aronchick Segal Pudlin & Schiller
1415 Route 70 East, Suite 405
Cherry Hill, NJ 08034
*Attorneys for Defendant*

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 13, 2026, I electronically filed the foregoing Reply in Support of Defendant's Motion to Dismiss with the Clerk of the United States District Court for the District of New Jersey. Counsel for all parties are registered CM/ECF users and will be served via CM/ECF.

By:   /s/ *Liza B. Fleming*
       Liza B. Fleming
       Deputy Attorney General

Dated: April 13, 2026